COMMONWEALTH vs. JOSEPH F. O'CONNOR.

Middlesex. February 9, 1979. — March 29, 1979.

Present: HALE, C.J., GRANT, & PERRETTA, JJ.

Constitutional Law, Self-incrimination. Error, Harmless. Practice,
Criminal, Trial of issues together, Psychiatric examination, In-
structions to jury, Disqualification of judge, Examination of jurors.
Evidence, Hearsay, Expert opinion, Statements to doctor. Insanity.
Jury and Jurors.

The judge at a criminal trial did not violate the defendant's constitu-
tional privilege against compulsory self-incrimination by ordering
him to submit to a psychiatric examination nor did he violate that
privilege in admitting testimony by the court-appointed psychia-
trist as to his opinion based on statements made to him by the
defendant during the course of the examination where the defend-
ant had elicited testimony from his own expert witness that was
based in part on the defendant's statements to him. [316-317]
The admission in evidence of inculpatory statements made by a de-
fendant to a court-appointed psychiatrist did not constitute re-
versible error where the defendant elicited similar testimony from
his own expert witness and took the stand himself and made incul-
patory statements. [317-319]
The judge at a criminal trial did not abuse his discretion in denying
the defendant's motion for a bifurcated trial on the issues of guilt
and mental capacity. [319]
The judge at a criminal trial did not err in excluding hearsay testimo-
ny even though an expert witness claimed that it formed the basis
for an opinion to which he testified. [319]
The judge at a criminal trial did not abuse his discretion in allowing
an expert witness to testify that he had been appointed by the court.
[320]
At a criminal trial, there was no error in the judge's charge on the
practical consequences of a verdict of not guilty by reason of insani-
ty. [320]
The judge at a criminal trial did not abuse his discretion in declining
to recuse himself at the sentencing stage of the trial where there
was no showing that he relied on extrajudicial information or on

any other material outside the scope of his discretion in the sentencing process. [320-321]

The judge at a criminal trial did not abuse his discretion in denying the defendant's motion for a psychiatric examination prior to sentencing pursuant to G. L. c. 123, § 15(e). [321]

The judge at a criminal trial did not abuse his discretion in denying the defendant's request to question prospective jurors regarding possible prejudice against psychiatric testimony where the judge conducted a general examination of the jurors and questioned them with regard to their ability to consider impartially the testimony of psychiatrists. [321]

The judge at a criminal trial did not err in refusing to allow a psychiatrist to testify as to the standard for criminal responsibility in Massachusetts. [321-322]

INDICTMENT found and returned in the Superior Court on February 14, 1977.

The case was tried before *Ronan, J.*

*James F. Sullivan (Allen Bress* with him) for the defendant.

*Robert M. Raciti,* Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from his conviction on so much of an indictment as charged two counts of sexual intercourse with a child under sixteen years of age (G. L. c. 265, § 23, as appearing in St. 1974, c. 474, § 3).[1] He assigns numerous errors. We summarize the facts consistent with the jury's verdict and which could have been found by them.

The defendant and one Colihan were driving in the defendant's car on October 7, 1976, when they noticed the victim walking along the side of the road. The two pulled up next to the victim, then fourteen years old, and she entered the front seat of the car in response to their invitation. As they drove along, the three smoked marihuana and engaged in idle conversation. After several requests by Colihan, the victim climbed over with him

---

[1] Both counts of the indictment charged that the victim was under the age of sixteen and that the acts had been forced. See G. L. c. 265, § 22A, as appearing in St. 1974, c. 474, § 2.

into the backseat while the defendant continued to drive. Shortly thereafter the defendant drove onto a dirt road and stopped in a wooded area where the victim had vaginal intercourse with Colihan and performed fellatio upon the defendant.[2] The defendant and Colihan then drove the victim back to town, where they dropped her off at a gas station.

1. In response to the judge's pretrial order, the defendant disclosed his intention to interpose the defense of insanity and his intention to rely on expert witnesses to establish that defense. He also stated that the expert witnesses would rely in part on statements made by the defendant.

The judge, pursuant to G. L. c. 123, § 15, then ordered the defendant to submit to a psychiatric examination to be conducted by Dr. Weiss, a court-appointed physician. The order strictly limited the use of the results of the examination along the lines of G. L. c. 233, § 23B, and within the guidelines of *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 767-769 (1977).

The defendant's expert, Dr. Zigelbaum, testified that the defendant suffered from a delusional form of paranoid schizophrenia and as a result could neither appreciate the wrongfulness of his act nor conform his behavior to the requirements of the law. He referred in his testimony to certain statements made to him by the defendant. The Commonwealth's expert, Dr. Weiss, testified in rebuttal that the defendant was not suffering from mental disease on the date of the crime. He, too, referred to statements made to him by the defendant.

The judge did not violate the defendant's constitutional privilege against compulsory self-incrimination by ordering the defendant to submit to a psychiatric examination.

---

[2] The victim testified that she submitted to sexual intercourse with the defendant and Colihan because of the latter's threats to kill her. The defendant testified that the victim freely consented to the sexual acts.

*Blaisdell* v. *Commonwealth*, 372 Mass. at 766-767. Nor did he violate this privilege in admitting testimony by Dr. Weiss as to his opinion based on statements made to him by the defendant during the course of that examination. *Blaisdell* v. *Commonwealth*, 372 Mass. at 769. When the defendant elicited testimony from Dr. Zigelbaum that was based in part on the defendant's statements to him, he waived his privilege against self-incrimination for such purposes and made it permissible for the Commonwealth to introduce in evidence a psychiatrist's testimony also based on the defendant's statements. *Blaisdell* v. *Commonwealth*, 372 Mass. at 766. We decline to accept the defendant's argument that *Blaisdell* must be reexamined in the light of *Lefkowitz* v. *Cunningham*, 431 U.S. 801 (1977), because the cases are distinguishable.

We must consider the limitations placed on such testimony by G. L. c. 233, § 23B. Under that statute no statement made by a defendant to a psychiatrist appointed by the court pursuant to G. L. c. 123, § 15, shall be admissible against him on any issue other than his mental condition. Such statements may be admissible on the issue of mental condition but not if they amount to confessions of guilt or admissions of inculpatory behavior related to the crime charged. See *Blaisdell* v. *Commonwealth*, 372 Mass. at 763. The statements of the defendant related in Dr. Weiss's testimony[3] should have been excluded under

---

[3] The defendant points particularly to the following testimony by Dr. Weiss referring to statements by the defendant.

The defendant told Dr. Weiss he was "involved in this" because, "Number 1, I enjoyed sex. I enjoyed it. Number 2, it is animal instinct. It is natural to do. It is natural for a man to need a woman. So if a man does not get sex, he will sooner or later get it in one way or another. Number 3, a person can go only so long without sex, and it is a human need, a need which should not be denied."

Dr. Weiss stated that the defendant "was surprised at all of this because he was not planning on being arrested, not planning on being caught and arrested."

The defendant told Dr. Weiss that "it was a favor to a girl to have sex in this manner," because "the girl involved can then honestly say to her mother or fiancé or anybody that she did not willingly give up

G. L. c. 233, § 23B, but it does not follow that their admission requires reversal.

The defendant, through the testimony of Dr. Zigelbaum, introduced evidence of statements that he had made to Dr. Zigelbaum that were to the same effect as those later testified to by Dr. Weiss.[4] Moreover, the defendant took the stand himself and admitted to participation in the acts which constituted statutory rape. Any inference of the defendant's guilt of statutory rape that could be derived from the defendant's statements to which Dr. Weiss testified on rebuttal was insignificant in light of the evidence introduced on that issue by the defendant himself, and any error here was harmless. See *Commonwealth* v. *Hanger*, 377 Mass. 503, 510-512 (1979). Compare *Commonwealth* v. *McNeil*, 328 Mass. 436, 440

---

her virginity but that it was forced upon her, and therefore, there is no reason for anyone to be irritated at her, that she should not be embarrassed about it."

Dr. Weiss stated that the defendant told him that "if his sexual needs would be taken care of, then he would not be forced to do it by himself."

[4] The Commonwealth points particularly to the following testimony by Dr. Zigelbaum: "Mr. O'Connor's delusional system in this case is clear. . . . The delusional system is this: It is perfectly all right for men to do anything they want with women or to have them sexually in this world because animals cohabit in that way. That . . . male animals take female animals in order to have sex with them, and therefore, it's perfectly reasonable for men to take women for sex in this society . . . Mr. O'Connor's acts, any of his sexual acts, are born out of an impoverished alienated sexual experience . . . therefore, all sex could possibly be rape and all rape could possibly be sex. Rape could be love, love sex."

"Mr. O'Connor's delusion, further, includes the fact that this is the way the world is, and therefore, doing something like that, one could not be faulted or criticized. One had done nothing wrong and certainly one had not done anything criminal . . . he cannot appreciate the criminality of his acts because of the fixed delusional system which says that this is the way life is supposed to be."

"In addition to that, that the delusion is substantiated by Mr. O'Connor's notion that, in fact, that's doing a favor for women, because women want to have sex . . . so that they can go home and say to their parents: 'I had sex, but it wasn't my fault.' "

(1952); *Commonwealth* v. *Chase*, 350 Mass. 738, 742, cert. denied, 385 U.S. 906 (1966); *Commonwealth* v. *Marsh*, 354 Mass. 713, 718-719 (1968); *Subilosky* v. *Commonwealth*, 358 Mass. 390, 396-397 (1970); *Commonwealth* v. *Pickles*, 364 Mass. 395, 399 (1973); *Commonwealth* v. *Morgan*, 369 Mass. 332, 341-342 (1975).[5]

2. (a) The defendant next claims error in the denial of his motion for a bifurcated trial on the issues of guilt and mental capacity. There is no constitutional right to a bifurcated trial. *Commonwealth* v. *Bumpus*, 362 Mass. 672, 681 (1972), judgment vacated and remanded on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974). The decision to grant or deny a bifurcated trial is within the sound discretion of the judge, and there was no abuse of discretion in the denial of the motion here. See *Commonwealth* v. *Haas*, 373 Mass. 545, 562 (1977).

(b) In the course of his argument on the above point the defendant slips in a contention that the judge's exclusion of testimony by Dr. Zigelbaum regarding statements made to him by the defendant's aunt was error. A statement that would otherwise be inadmissible as hearsay is not made admissible simply because an expert witness claims that it formed the basis for an opinion to which he testified. *Commonwealth* v. *Howard*, 355 Mass. 526, 529 (1969), overruling *Commonwealth* v. *Colangelo*, 256 Mass. 165, 166-167 (1926). The testimony was correctly excluded.

---

[5] We note that the exceptions upon which the defendant relies here were taken during extensive and wide ranging bench conferences or lobby discussions, and not when the evidence was introduced at trial. It could be said that the exceptions were taken to predictions and not to rulings. Compare *Commonwealth* v. *Gallo*, 6 Mass. App. Ct. 650, 651 (1978). While we have treated these exceptions as properly taken, we extend a word of caution that unless it is clear from bench conferences that exceptions are taken to rulings, objections should be made and exceptions taken at the time the evidence is offered to the jury to ensure the preservation of the issue on appeal.

(c) Also as a part of his argument on the bifurcated trial issue, the defendant contends that the judge should not have allowed Dr. Weiss to testify that he had been appointed by the court. The judge acted within his discretion in admitting that testimony (compare *Cushing* v. *Jolles*, 292 Mass. 72, 76 [1935]) which was, in any case, insignificant and, in view of the judge's cautionary instructions, did not prejudice the defendant's case. See *Commonwealth* v. *Morgan*, 369 Mass. at 341.

(d) As a further part of his argument on bifurcation, the defendant contends that the judge committed error when he charged the jury on the practical consequences of a verdict of not guilty by reason of insanity by paraphrasing the controlling statutes, G. L. c. 123, § 8, and G. L. c. 123, § 16(*b*). The charge was correct and adequately complied with the requirements of *Commonwealth* v. *Mutina*, 366 Mass. 810, 822-823 & n.12 (1975).

3. The defendant maintains that it was inappropriate for the trial judge to sit on the sentencing stage of the trial after having been exposed to inadmissible and potentially prejudicial information regarding the defendant during the course of the trial.

The decision to withdraw from a case at any stage ordinarily rests within the trial judge's own sound discretion. *Commonwealth* v. *Coyne*, 372 Mass. 599, 602 (1977). *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. 571, 587 (1977). Normally recusal is required only when it is shown that the judge has a bias or prejudice against a party based on an extrajudicial source. *Commonwealth* v. *Leventhal*, 364 Mass. 718, 722 (1974). *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. at 587. A judge often is exposed to inadmissible material damaging to the defendant during the course of a particular trial, but his familiarity with such material, without more, does not require him to withdraw from the case. *Commonwealth* v. *Leventhal*, 364 Mass. at 722. *Commonwealth* v. *Valliere*, 366 Mass. 479, 483 (1974). *Commonwealth* v. *Leate*, 367 Mass. 689, 697 (1975). *Commonwealth* v. *Campbell*, 5

Mass. App. Ct. at 587. We note that a judge may consider a wider range of information at the sentencing stage of a trial than would be admissible on the issue of guilt. *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 220 (1976). The defendant, however, has made no showing that the judge relied on extrajudicial information or on any other material outside the scope of his discretion in the process of setting the defendant's sentence. *Commonwealth* v. *Valliere*, 366 Mass. at 483. Contrast *Commonwealth* v. *LeBlanc*, 370 Mass. at 222-225. The judge did not abuse his discretion in declining to recuse himself.

4. The judge did not abuse his discretion in denying the defendant's motion for a psychiatric examination prior to sentencing pursuant to G. L. c. 123, § 15(*e*), which permits, but does not require, such an examination.

5. The defendant argues that the judge should have allowed his request to question prospective jurors regarding possible prejudices against psychiatric testimony. The nature and scope of the examination of prospective jurors is normally a matter within the trial judge's sound discretion (*Commonwealth* v. *Ricard*, 355 Mass. 509, 511 [1969]), subject to certain statutory and constitutional requirements not here pertinent. See G. L. c. 234, § 28; *Commonwealth* v. *Haglund*, 4 Mass. App. Ct. 858, 859 (1976). Compare *Commonwealth* v. *Killelea*, 370 Mass. 638, 649-650 (1976). The judge conducted a general examination of the prospective jurors and in fact questioned them with regard to their ability to consider impartially the testimony of psychiatrists. The defendant was entitled to no more.

6. The defendant argues finally that the judge erred in refusing to allow Dr. Zigelbaum to testify as to the standard for criminal responsibility in Massachusetts.

It is the duty of the trial judge to instruct the jury on the law pertinent to the case (*Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 [1968]), and the opinion of a witness respecting a question of law is incompetent. See *Moskow* v. *Burke*, 255 Mass. 563, 569 (1926). Cf. *Kaplan* v. *Boston*,

330 Mass. 381, 385 (1953). The proffered testimony would have involved the doctor's opinion on a legal issue and was therefore properly excluded. We note that the judge allowed the witness to frame his opinion of the defendant's criminal responsibility in terms of the relevant legal factors. See *Commonwealth* v. *McHoul*, 352 Mass. 544, 546-547, 555 (1967).[6] This gave the witness the opportunity to show the jury, in light of the judge's later instructions on criminal responsibility, that he had based his over-all opinion of the defendant's responsibility on the proper criteria.

*Judgment affirmed.*

---

[6] A person is considered not responsible for criminal conduct "if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." *Commonwealth* v. *McHoul*, 352 Mass. at 546-547, quoting from § 4.01 of the American Law Institute's Model Penal Code (Proposed Official Draft 1962).