Gregory HEFLIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–81–029–CR.

Court of Appeals of Texas,
Austin.

Sept. 1, 1982.

Rehearing Denied Oct. 13, 1982.

Discretionary Review Refused
Jan. 12, 1983.

David H. Reynolds, Frank Maloney & Associates, Austin, for appellant.

Ronald Earle, Dist. Atty., Philip A. Nelson, Jr., First Asst. Dist. Atty., Austin, for appellee.

POWERS, Justice.

The trial court convicted appellant of intentionally murdering his mother, for which crime the jury assessed punishment of thirty years imprisonment. Tex.Penal Code Ann. art. 19.02(a)(1). Judicially admitting the homicide, appellant interposed at trial the defense of insanity, Tex.Code Crim.P. Ann. art. 46.03, and brings to this court

numerous grounds of error which bear on that defense. We will affirm the trial court judgment.

■ Appellant contends in his initial ground of error that the trial court erred when it overruled his challenge for cause, directed at a venireman who was allegedly prejudiced against the insanity defense. Tex.Code Crim.Pro.Ann. art. 35.16. The record, for this ground to be sustained, must establish the following: (1) the trial court overruled a valid challenge for cause; (2) appellant exhausted his number of peremptory challenges; (3) one or more disqualified jurors sat in the case; and (4) the trial court denied appellant's request for additional peremptory challenges, or would have done so had they been requested by appellant. *Peters v. State*, 575 S.W.2d 560 (Tex.Cr.App.1979); *Adami v. State*, 524 S.W.2d 693 (Tex.Cr.App.1975); *Powers v. State*, 497 S.W.2d 594 (Tex.Cr.App.1973). The requisite elements are not established in present case. The juror in question did not state that he would be unable in every circumstance to find the accused not guilty by reason of insanity; he stated that he would set aside any problem he might have with the insanity defense and "accept it." He was not shown, therefore, to have possessed the bias essential to a valid challenge for cause. *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977); *Huffman v. State*, 450 S.W.2d 858 (Tex.Cr.App.1970). Moreover, the record does not establish either a request by appellant for additional peremptory challenges which the trial court denied, or that the trial court would have denied them had they been requested. *Peters v. State, supra; Burns v. State, supra.* Accordingly, we overrule appellant's first ground of error.

■ In appellant's next three grounds of error, he contends the trial court erred in refusing to permit his counsel to explain to the venire generally, or to the jury by instruction, the effect of appellant's being found guilty by reason of insanity, referring in this respect to the commitments authorized by the provisions of Tex.Code Crim.Pro.Ann. art. 46.03. The same conten-tion was rejected in *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr.App.1977). We overrule the ground of error.

In several grounds of error, appellant contends the trial court erred in failing to exclude the testimony of four psychological expert witnesses called by the State to testify in rebuttal of similar testimony adduced by appellant to prove his plea of insanity. The psychological experts called by the State examined appellant under authority of various orders entered by the trial court before trial. Two of the witnesses were ordered initially to examine appellant for the purpose of ascertaining his competency to stand trial; and were subsequently ordered to examine him to ascertain, as well, his mental state at the time of the homicide, following his filing notice that he would rely upon the defense of insanity. Tex.Code Crim.Pro.Ann. arts. 46.-02, 46.03. The trial court ordered the remaining two expert witnesses to examine appellant solely with regard to his claim of insanity at the time of the homicide. At trial, appellant's counsel judicially admitted that appellant was competent to stand trial and that issue is not before us on appeal.

The four expert witnesses called by the State were permitted to relate to the jury their respective opinions that appellant was sane at the time of the homicide. They were permitted as well to relate the substance of their conversations with appellant, the particulars of psychological tests which they administered to him, and their observations of his behavior, all of which had taken place in numerous interviews between the witnesses and appellant following his arrest. Appellant's counsel was not present at these interviews and did not consent to them. His attempts to have excluded the testimony of these expert witnesses were overruled by the trial court; the chronological account which follows will illuminate his ensuing contentions on appeal.

Appellant killed his mother on June 1, 1980 in Austin, Texas and attempted to flee to Canada. He was arrested at the Canadian border on June 3. The grand jury in-

dicted him on June 4 and, on the same day, the State moved the trial court to appoint disinterested and qualified experts to ascertain appellant's competency to stand trial. Tex.Code Crim.Pro.Ann. art. 46.03. The motion averred as grounds for such appointment appellant's alleged murder of his mother, his seriously wounding his sister in the same episode, and information received by the State that appellant had recently "dropped out of school and [had become] withdrawn and depressed and [had] consulted a psychiatrist with regard to such condition." Without notice to appellant's counsel, the trial court considered the State's motion *ex parte* and granted it the same day, appointing a psychiatrist on June 4 to make the competency examination.

Appellant returned to Austin on June 5 in the custody of a policeman. On that day, appellant's counsel moved the trial court to "stay" its order of the previous day which had appointed a psychiatrist to conduct the competency examination. Appellant's motion averred several basic grounds: the appointment of the psychiatrist was made without notice to appellant's counsel and thereby deprived appellant of his right, under the Sixth Amendment to the Constitution of the United States, to meaningful assistance of counsel; the trial court's order deprived appellant of his rights, under the Fifth Amendment, to remain silent and free of any official compulsion which might result in his making self-incriminating statements; and the provisions of Tex.Code Crim.Pro.Ann. arts. 46.02 and 46.03 were unconstitutional in purporting to authorize an examination in the circumstances.

On June 5, the trial court denied appellant's motion after hearing. At 7:30 p. m. that same day, a magistrate advised appellant of the various rights of accused persons delineated in Tex.Code Crim.Pro.Ann. art. 15.17. Later the same evening, the psychiatrist appointed by the trial court interviewed appellant in the company of another psychiatrist who had not, at that time, been appointed by the trial court, although he was subsequently appointed on June 9 to assist the first psychiatrist in determining

appellant's competency to stand trial. On June 6, a neuropsychiatrist, retained by appellant's counsel, examined appellant. In the days which followed, appellant was examined alternately and on several occasions by his own neuropsychiatrist and the psychiatrists appointed by the trial court to determine his competency to stand trial. The psychiatrists appointed by the trial court determined that appellant was competent to stand trial and filed with the trial court their report to that effect. Tex.Code Crim.Pro.Ann. art. 46.02 § 3(d).

On June 27, appellant filed a notice that he would introduce at trial evidence of his insanity at the time of the homicide. Thereafter, the two psychiatrists appointed by the trial court were ordered to examine appellant with regard to the insanity defense. They again interviewed and tested appellant for that purpose. Concluding that he was sane at the time of the homicide, they filed their report to that effect. Tex.Code Crim.Pro.Ann. arts. 46.02 § 3(i), 46.03, § 3(a), (d). The trial court thereafter ordered that two other psychological experts also examine appellant on the issue of his insanity at the time of the homicide. They too concluded he was sane.

Appellant raises on appeal, as he did below, several constitutional and statutory grounds for the exclusion of the testimony of the psychological experts appointed by the trial court. They may be summarized as follows: (1) the provisions of Tex.Code Crim.Pro.Ann. art. 46.02(3)(g) expressly exclude, on the issue of guilt, any evidence of statements made by the accused during an examination to determine his competency to stand trial; (2) the trial court's order for the competency examination was based upon grounds that were, and are, legally insufficient; (3) in conducting their competency examination, the psychological experts exceeded the authorized scope of the examination, enlarging the very first interview to include the question of appellant's sanity at the time of the offense, thereby making themselves agents of the State and not disinterested witnesses concerned only with appellant's competency to stand trial,

as contemplated by the holding in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); (4) appellant's counsel was not given advance notice of the interviews, resulting in appellant's being denied his right under the Sixth Amendment to the effective assistance of counsel in deciding whether to submit to the competency interviews and in preparing for them; (5) appellant did not consent to the interviews and testing conducted by the psychological experts appointed by the trial court; (6) in none of the interviews did appellant first receive advice of his "right to remain silent" and a warning that "anything said can and will be used against" him in court, as required by the decision in *Miranda v. Arizona,* 384 U.S. 436 (1966); (7) the State failed to establish that appellant, before participating in the interviews and tests, received the required warning of his *Miranda* rights, understood them, and voluntarily waived them; (8) one of the psychological experts appointed by the trial court interviewed appellant *after* the filing of his competency and sanity reports, and therefore after his authority to interview appellant had expired; (9) the provisions of Tex.Code Crim.Pro.Ann. art. 46.03 are unconstitutional in purporting to allow the introduction of statements made by an accused during a sanity examination, contrary to the Fifth Amendment's guaranty against incriminating statements compelled by the State, applicable to State criminal proceedings through the Fourteenth Amendment; (10) the provisions of Tex.Code Crim.Pro.Ann. arts. 46.02 and 46.03 are unconstitutional in purporting to allow examinations of an accused's mental state without the presence of his counsel, during the examinations, contrary to the Sixth Amendment's guaranty of the right of counsel in criminal cases; and (11) the provisions of Tex.Rev.Civ.Stat. Ann. art. 5561h, assuring the confidentiality of mental health information and prohibiting the disclosure of communications between a "patient/client [sic] and a professional," rendered inadmissible the testimony of the court-appointed psychological experts in the present case.

■ The grounds upon which appellant insists the testimony should have been excluded must be understood in the special circumstances of the present case, wherein appellant judicially admitted the homicide, interposed the insanity defense, and, in an attempt to prove that defense, introduced the testimony of his own psychological experts who based their opinions of insanity upon numerous interviews and tests to which appellant voluntarily submitted. Moreover, a careful distinction must be maintained, though it is ignored by appellant, between the three categories into which the whole of the testimony of the court-appointed expert witnesses may be divided: (1) their statements to the jury that appellant admitted to them that he killed his mother; (2) their statements that appellant was, in their opinion, sane at the time of the homicide; and (3) their statements describing the particulars of their interviews with appellant, the tests they administered to him, and their observations of his behavior, from all of which they formed their opinions. We hold that any error in admitting the first category of testimony was harmless error, beyond a reasonable doubt, if it was error at all, which we do not believe it was. Appellant, by statements of counsel to the jury before any psychological evidence was introduced, judicially admitted the homicide, which was, indeed, the factual basis upon which appellant erected his entire theory of paranoid schizophrenia—a mental illness which appellant contended rendered him incapable of resisting the urge to kill his mother, as elaborated at length by his psychological experts.

The matter is more complicated with respect to the remaining two categories of testimony. We conclude, nevertheless, that such testimony did not violate appellant's Fifth Amendment rights because appellant had waived his privilege thereunder; the trial court's violation of appellant's Sixth Amendment right to meaningful assistance of counsel was rendered harmless by subsequent proceedings in the case; and the relevant statutes were constitutional and properly applied by the trial court.

■ Appellant interjected by his special plea the defense of insanity. By introducing extensive psychological testimony of his insanity, resulting from contemporaneous interviews and tests by his own psychological experts, before the psychological witnesses called by the State ever testified, appellant implied that the interviews and tests conducted by his own experts, and their resulting conclusions, represented the truth of the matter regarding his mental state at the time of the homicide. He invoked by his plea and his evidence the function of the trial court to determine the truth of his plea of insanity, a defense for which he had the burden of proof. He invoked as well the fundamental purpose of the Fifth and Sixth Amendments upon which he now relies incongruously to urge the exclusion of testimony of identical character but opposite effect, that purpose being to assure an adversary system of criminal justice. Such a system, under the Constitution of the United States, includes without question a right in the State to test the truth of an accused's plea of insanity, whether by cross examination or by introducing in evidence the contrary opinions of others who had occasion to interview, test, and observe the accused and form thereby an expert opinion of his mental state at the time of the alleged offense. *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). Had the accused taken the stand personally, he would have subjected his testimony to these tests that the jury might be assisted in arriving at the truth; we see no difference when he does essentially the same thing through his communications to his expert psychological witnesses, which they relate to the jury as illustrating or substantiating various aspects of their conclusions that he was insane at the time of the homicide.

The Supreme Court of the United States, in *Estelle v. Smith, supra,* took care to point out the significance of an accused's reliance upon the defense of insanity, as it bore upon enforcement of the exclusionary rules designed to fully effectuate the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel. The language used there denies the validity of any procedure whereby an accused might raise a defense of insanity which the State could not possibly meet owing to the strictures of an exclusionary rule:

> Nor was the interview [in *Estelle v. Smith*] analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he has interjected into the case. Accordingly, several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist. [citations omitted]
>
> Respondent, however, introduced no psychiatric evidence, nor had he indicated that he might do so.

■ We hold that appellant, by pleading and attempting to prove his insanity through the introduction of the testimony of expert psychological witnesses who had observed, interviewed, and tested appellant with his cooperation, waived his Fifth Amendment privilege against self-incrimination. *Stultz v. State,* 500 S.W.2d 853 (Tex.Cr.App.1973); *Blaisdell v. Commonwealth,* 372 Mass. 753, 364 N.E.2d 191, 200 (1977); *State v. Whitlow,* 45 N.J. 3, 210 A.2d 763 (1965); *Lee v. County Court,* 27 N.Y.2d 432, 318 N.Y.S.2d 705, 267 N.E.2d 452, *cert. denied,* 404 U.S. 823, 92 S.Ct. 46, 30 L.Ed.2d 50 (1971); *McVeigh v. State,* 73 So.2d 694 (Fla.), *appeal dismd.,* 348 U.S. 885, 75 S.Ct. 210, 99 L.Ed. 696 (1954); *Lewis v. Thulemeyer,* 189 Colo. 139, 538 P.2d 441 (1975); *People v. Segal,* 54 N.Y.2d 58, 444 N.Y.S.2d 588, 429 N.E.2d 107 (Ct.App.1981); *Commonwealth v. O'Connor,* 7 Mass.App. 314, 387 N.E.2d 190 (1979); *U.S. v. Cohen,* 530 F.2d 43 (5th Cir., 1976); *U.S. v. Albright,* 388 F.2d 719, 726 (4th Cir., 1968).

The privilege against compelled self-incrimination, contained in the Fifth Amendment provision that "[n]o person ... shall be compelled in any criminal cases to be a witness against himself," rests upon four fundamental values:

a. *The assurance of an accusatorial system of criminal prosecution rather than one of inquisition.* The privilege was designed in part to require that guilt be established by evidence freely and independently secured through resources while lie at the command of the prosecution: police detectives, police laboratories, and government prosecutors. Without the constitutional privilege, the temptation to rely upon the defendant's own words to convict him would be too great. *Miranda v. Arizona, supra.*

b. *The right of persons to a private enclave.* One's innermost beliefs and thought processes should be immune from discovery by the government, even in criminal prosecutions. *Id.*

c. *The right of persons to be free from official coercion.* Police custody furnishes an inherent opportunity for undue mental and physical pressure, whether subtle or blatant, directed at the accused in a criminal proceeding. *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The coercive effect of questioning by a highly-trained and skilled psychiatrist, in such circumstances, may be even more malignant than that of an ordinary police detective. *See e.g., Leyra v. Denno,* 347 U.S. 556, 559, 74 S.Ct. 716, 718, 98 L.Ed. 948 (1954). We reject coerced statements of self-incrimination for humane reasons and for their intrinsic lack of reliability. When such a statement results from official custody, we assume it to be the product of coercion unless the prosecution demonstrates that it was given by the accused notwithstanding certain minimum, specific procedural safeguards designed to assure its voluntariness, that is, advice to the accused of his right to remain silent and a warning that his statements can and will be used against him in court. *Estelle v. Smith, supra; Miranda v. Arizona, supra.*

d. *The right of persons to be free from the "Cruel Trilemma."* We regard it as fundamentally unfair and inhumane for the government to manipulate an accused's instinct for self-preservation; that is, the government's subjecting an accused to the "cruel trilemma or self-accusation, perjury or contempt." *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

These fundamental values are not at risk, or the risk attenuates enormously, when an accused concedes a criminal act, pleads insanity, and introduces psychological testimony, based upon examination by his own expert witnesses, to prove that defense. *See generally,* R. Aronson, "Should the Privilege Against Self-incrimination Apply to Compelled Psychiatric Examinations?," 26 Stanford L.Rev. 55 (1973). While the waiver of a constitutional right should not be lightly inferred, we are unable to imagine a stronger case for it than the one now before us. Without its own examination of appellant, the State would be unable either to introduce its own expert testimony or effectively cross-examine those expert witnesses who testified for the appellant. We may not allow an accused to be the sole judge of his claim of insanity; the temptation for fraud to avoid punishment, in that case, would be as obvious as the opportunity. In comparison, the fundamental values expressed in the Fifth Amendment are slight indeed in a case such as the present. We need not, in the present case, concern ourselves with whether a similar waiver should be inferred when an accused pleads insanity but introduces no testimony of expert witnesses which is based upon their interviews with the accused or tests they have administered to him.

We do, however, hold that appellant's chosen course in this case removed from the proceedings any purpose designed to be served by a court-made exclusionary rule intended to assure the forceful protection of the Fifth Amendment, *Estelle v. Smith, supra, Demouchette v. State,* 633 S.W.2d 879 (Tex.Cr.App.1982); and any purpose designed to be served by a statutory exclu-

sionary rule such as Tex.Code Crim.Pro. Ann. art. 46.02 § 3(g) and Tex.Rev.Civ.Stat. Ann. art. 5561h, each of which must be interpreted in conjunction with the specific provision of Tex.Code Crim.Pro.Ann. art. 46.03 § 3(a), which authorizes court-appointed psychological experts to testify as to the sanity of an accused "at any trial or hearing on this issue."

■ The provisions of Tex.Code Crim. Pro.Ann. art. 46.02 § 3(i) specifically authorize the same psychological expert to conduct both competency and sanity examinations. When that occurs, as it did in the present case, the competency and sanity examinations are in practical effect combined and the expert may base his opinion upon the entirety of his examination of the accused. *De Russo v. State,* 579 S.W.2d 224 (Tex.Cr.App.1979). This is so because we know of no effective way to require an individual who conducts both examinations to compartmentalize his intellectual function so that his opinion as to the accused's sanity or insanity rests exclusively upon impressions which he received in a sanity examination, exclusive of any impressions he may have received previously in the course of a competency examination. Although *De Russo v. State,* supra, dealt with a *single* order of the trial court directing an expert to conduct a "dual purpose examination," that is, an examination into appellant's sanity at the time of the offense as well as his competency to stand trial, the rationale of the decision is equally applicable when the trial court by *separate* orders directs the same expert to conduct both examinations: the accused's mental state at one stage may be manifested by his conduct at the other or his perceptions at either.

■ Moreover, the holding in *Estelle v. Smith, supra,* does not require the exclusion of any expert testimony on the basis that the first psychiatrist, appointed by the State to conduct the competency examination, expanded the scope of his initial interview with appellant to inquire into appellant's mental state at the time of the offense. What *Estelle* condemns is the introduction of affirmative evidence to establish an issue upon which the State has the burden of proof, when that evidence has been obtained from the accused without a *Miranda* warning and advice and in an expansion of the ostensibly neutral examination into an accused's mental state. Hence, the Supreme Court of the United States took care to distinguish the contrary situation, implying that the Fifth Amendment is not implicated if the State uses testimony derived from such an examination to meet contrary evidence first introduced by the accused to prove a crucial issue upon which *he* has the burden of proof, insanity for example. The psychological expert who examines an accused becomes an agent of the State only when he expands the examination to include a crucial issue upon which the *State* has the burden of proof, such as future dangerousness. 451 U.S. at 468, 469, 101 S.Ct. at 1876. Incompetency to stand trial and insanity at the time of the offense are issues upon which the accused has the burden of proof. Tex.Code Crim.Pro.Ann. art. 46.02 § 1(b); Tex.Penal Code Ann. § 8.01(a). Therefore, the Fifth Amendment was not implicated in the present case when the court-appointed psychiatrist inquired, in a competency interview, about appellant's mental state at the time of the homicide, even in the absence of an order which directed the psychiatrist to make a sanity examination. We turn, then, to appellant's claim that the trial court violated his Sixth Amendment right to meaningful assistance of counsel.

■ It is rather plain that there was error in the trial court's directing a competency examination without advance notice to appellant's counsel. Such advance notice was required in order that appellant's right to counsel, under the Sixth Amendment, could be meaningfully exercised at a critical stage of the proceedings. *Estelle v. Smith, supra; Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). While condemning the procedure, we hold the error harmless, owing to appellant's agreement in the psychiatrist's determination that appellant was competent to stand trial, foregoing his right to a hearing before

a separate jury with respect to that issue. (We have discussed above the Fifth Amendment consequences of the psychiatrist's expansion of the competency examination to include an inquiry relative to appellant's mental state at the time of the offense.) Did appellant suffer a violation of his Sixth Amendment right by reason of not having his counsel *present* at the interviews conducted by the psychological experts· appointed by the Court?

In *Estelle v. Smith, supra,* the Court noted but did not comment on the proposition that an attorney's presence during a psychological examination by court-appointed experts contributes little to the neutral statutory purpose of the examination, and might seriously frustrate that purpose. The Court of Criminal Appeals had made the same observation earlier in holding that such an examination was not a "critical stage" of a criminal proceeding, at which point the Sixth Amendment right to counsel becomes effective. *Stultz v. State,* 500 S.W.2d 853 (1973); *Gholson v. State,* 542 S.W.2d 395 (1976); *Livingston v. State,* 542 S.W.2d 655 (1976). *Estelle* held to the contrary—such an examination does constitute a "critical stage" of the proceedings. 451 U.S. at 467, 101 S.Ct. at 1875. See *Wilder v. State,* 583 S.W.2d 349, *vacated* 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 987, *aff'd on other grounds after remand,* 623 S.W.2d 650 (Tex.Cr.App.1981). *Estelle* did not criticize the observation of the Court of Appeals in that case that "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination." 602 F.2d 694, 708.

We hold the Sixth Amendment did not entitle appellant to have his counsel present at a psychological examination conducted by a court-appointed expert, first to determine appellant's competency to stand trial and, thereafter, his mental state at the time of the homicide.· Tex.Code Crim.Pro. Ann. arts. 46.02, 46.03. In either case, the purpose of the examination was neutral and the statutes consequently make no provision for counsel to be present at an examination. *Id.* An examination of an accused by a court-appointed psychological expert does, nevertheless, present an opportunity for transactions wherein the accused may make self-incriminating statements or otherwise prejudice his right to a fair trial should one follow. An accused's Fifth, Sixth, and Fourteenth Amendment rights are therefore inextricably intertwined when the trial court directs an examination into his mental state. In the case of a competency examination, however, these rights need not be exposed to invasion by the State, for in consultation with his counsel, an accused *may elect not to submit to the examination.* In the case of an insanity examination, the power of the trial court to order the examination exists only when the accused files a notice in the proceedings that he will offer evidence of his insanity. In either case, an examination into an accused's mental state can result only from his own election, taken with the advice of counsel; even then he is protected from unfairness in the examination by his right to have the assistance of his counsel in preparing for an examination and in his right afterwards to receive a copy of the resulting report, his right to depose the examiner, his right to suppress before trial any prejudicial admissions or other evidence which results from the examiner's threats, trickery, or other unfairness, and by the obligation of the court to appoint *disinterested* experts to conduct the examinations. We conclude, therefore, that the Sixth Amendment, whether to assure a fair trial under the Fourteenth Amendment or to protect appellant's Fifth Amendment privilege, did not require the presence of counsel at any of the psychological examinations.

We have carefully examined appellant's remaining grounds of error and find them to be without merit. They are, accordingly, overruled and the judgment of the trial court is affirmed.