**John Howard ABDNOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–01289–CR.**

Court of Appeals of Texas,
Dallas.

Aug. 16, 1988.

Ronald L. Goranson, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before ENOCH, C.J., and ROWE and HECHT, JJ.

ON REMAND FROM COURT OF
CRIMINAL APPEALS

ENOCH, Chief Justice.

John Howard Abdnor was convicted of murder and sentenced to life imprisonment in November of 1981. Abdnor then litigated, over the next five and one-half years, to be declared an indigent for the purpose of having his competency hearing and trial transcripts prepared at county expense. *See Abdnor v. Ovard,* 635 S.W.2d 864 (Tex. App.—Dallas 1982), *aff'd,* 653 S.W.2d 793 (Tex.Crim.App.1983); *Abdnor v. State,* 687 S.W.2d 14 (Tex.App.—Dallas 1984), *rev'd,* 712 S.W.2d 136 (Tex.Crim.App.1986). Abdnor's request was granted on May 27, 1987. This appeal on the merits of his case then commenced. In fourteen points of error, Abdnor cites error in the trial below because of violations of Articles 46.02, section 3(g) and 38.22 of the Texas Code of Criminal Procedure; violations of due course and due process of law; violation of the mental health privilege; the admission of an extraneous offense; failure by the trial court to admit admissions by the State; prosecutorial misconduct; and improper argument by the State. Finding no merit in any of these points, we affirm the conviction.

Abdnor's trial took seven weeks to complete; the statement of facts in the case fills forty volumes and 7,000 pages. The record reveals that Abdnor killed a nurse with whom he had become romantically involved during a stay in a psychiatric hospital. Trial evidence established that the woman was shot four times at close range with a Marlin 30.30 rifle while in Abdnor's apartment. Abdnor was apprehended by Dallas County deputy sheriffs in his apartment soon after the shooting.

After determination by a jury that Abdnor was competent to stand trial, Abdnor's trial proceeded. Because Abdnor asserted insanity as an affirmative defense, the jury in the trial on the merits heard testimony from several psychiatric experts and lay witnesses on the insanity issue. At the conclusion of the evidence, the jury returned a guilty verdict and later sentenced Abdnor to life imprisonment.

*Article 46.02, section 3(g) Violation*

In point of error one, Abdnor contends that the trial court erred in permitting the State to use statements he made during his pretrial competency examination to Dr. Griffith, a psychiatrist. Abdnor complains that the State improperly used these statements in two ways: first, in offering the statements themselves through Dr. Griffith's testimony; and second, in allowing Dr. Griffith to give his opinion, based upon those statements, that Abdnor was sane at the time of the shooting. We conclude that the trial court erred in allowing the State to use Abdnor's statements made during his competency examination, but that such error was harmless.

Article 46.02, section 3(g) of the Texas Code of Criminal Procedure states:

> No statement made by the defendant during the examination or hearing on his competency to stand trial may be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding.

*Ballard v. State,* 519 S.W.2d 426 (Tex. Crim.App.1975) (opinion on rehearing), construed a predecessor statute, former section 2(f)(4) of article 46.02. Act of June 17, 1967, ch. 659, § 33, 1967 Tex.Gen.Laws 1732, 1750. The court held that "[s]tatements made by the accused during [a competency] examination are not admissible *for any purpose* on the issue of his guilt. The use of such statement is flatly and absolutely prohibited and there are no exceptions." *Ballard,* 519 S.W.2d at 429 (emphasis in text).

■ Abdnor first complains that article 46.02, section 3(g) was violated when the trial court allowed Dr. Griffith, called as an expert witness for the State, to repeat, over Abdnor's objection, statements Abdnor made to him during his examination to determine Abdnor's competency to stand trial. Specifically, Dr. Griffith testified as follows to statements made by Abdnor during that examination:

Q [By the State's Counsel]: ... Did you move into what the Defendant told you had occurred on the night that Janis Ballew was shot and killed, and her life was ended?

\* \* \* \* \* \*

A [By Dr. Griffith]: He said, "Something happened that night; she was talking about my kid, one thing and another. I got the gun out and I looked around, and she had blood on her. Blood was everywhere, and I was standing around with a rifle."

Then, he described the rifle to me.

\* \* \* \* \* \*

He said it was a 30.30 that he had never hunted with.

\* \* \* \* \* \*

Well, he said it had been in the family for several years.

\* \* \* \* \* \*

Q Did you talk to the Defendant about what had occurred prior to the actual shooting of the victim; in other words, earlier than [sic] evening, where they were, how she happened to get over there?

A Yes. He said that earlier in the evening, she had "called him three times, and wanted to come over. I said, 'Okay; if you won't argue. But as soon—but she started right in arguing, as soon as she came in, and talking about drugs.'"

\* \* \* \* \* \*

Q Did he tell you what Janis Ballew did when she got there?

A Yes. He said she started arguing, which I believe we've mentioned, and said she pulled off her clothes, or part of her clothes, and wanted to get in bed.

\* \* \* \* \* \*

Q Did you ask him—moving down into the actual shooting, did you ask him exactly—he told you, originally, I believe you said, that they got into an argument, and he got the gun, and the next thing he knew, that she had blood all over her; is that right?

A Correct.

Q Now, I'll ask you if he later told you whether or not she had been shot, and, if so, how many times he shot her.

A Yes; he went ahead with the— what he was telling me; he said he shot her five times.

The next day following this testimony by Dr. Griffith, after further considering Abdnor's objection, the trial court reversed itself, sustained Abdnor's objection, and instructed the jury to disregard the testimony.

Although the trial court erred in admitting this testimony by Dr. Griffith in violation of article 46.02, section 3(g), essentially the same evidence was properly admitted through other witnesses. In *Caballero v. State*, 587 S.W.2d 741, 743–744 (Tex.Crim. App.1979), the court held that although the trial court had erred in admitting a psychologist's testimony about his conversation with the accused during a competency examination, the error was harmless because the accused had confessed to others the details of his wife's murder.

In the instant case, a friend of Abdnor's testified that he talked with Abdnor shortly before the shooting. When asked whether Abdnor had expressed any feelings toward the victim, the witness testified:

He told me that she had an abortion; that he was mad as hell, and he said, "That bitch has really screwed up this time." And I tried to calm him down, and talk to him.

He said, "If she walked through that door right now, I'd blow her head off. I'd just blow her right up against the wall."

Abdnor's ex-wife testified that shortly after the shooting Abdnor called and said, "I just called to tell you I killed a f_____ flight nurse." She testified that she asked Abdnor where the nurse was, and he said, "The f_____ bitch is lying up against the door." She then testified:

Q [By the State's Counsel]: Did he tell you why he had shot her?

A He said, "The f_____ bitch just kept yelling at me, and I told her to shut up, and she wouldn't shut up."

And he said ... she wanted him to marry her, and he wasn't going to marry her.

\*     \*     \*     \*     \*     \*

Q Did he ... say anything about whether this would have happened if you had stayed with him?

A He said, "... this would have never happened if you hadn't divorced me." He said, "If you would have just stood behind me and supported me ... this would never have happened."

■ Inasmuch as testimony similar to Dr. Griffith's was properly admitted through other witnesses, we find that the error in admitting Dr. Griffith's testimony was harmless. If his testimony added anything to the testimony of others, it was at most some degree of credence. Any harm was cured by the trial court's instruction to the jury to disregard the testimony.

■ Second, Abdnor complains that article 46.02, section 3(g) was also violated when the trial court allowed Dr. Griffith to use Abdnor's statements as a basis for his opinion that Abdnor was sane at the time of the killing. Specifically, Dr. Griffith testified, over Abdnor's objection:

Q ... With respect to your original examination ... of this Defendant, for the purpose of competency, did you have occasion, during that competency hearing, to speak to him; is that correct, and him speak to you?

\*     \*     \*     \*     \*     \*

A Yes.

Q *Based upon those conversations and your examination of the Defendant,* is it your opinion that on that date, as well as [the date of the killing], that the Defendant was not suffering from a mental disease or defect—paranoid schizophrenia—such that it caused him not to know the difference between right or wrong, or caused him not to be able to conform his conduct at the time to the requirements of the law, if he wanted to?

\*     \*     \*     \*     \*     \*

A He did not have a mental illness; he was not paranoid schizophrenic.

(Emphasis added.) Abdnor asserts that admission of this testimony placed him in the untenable position of having to choose between eliciting from Dr. Griffith what

statements Abdnor made that supported his opinion and thus in effect offering those statements himself when they would otherwise be inadmissible, or foregoing cross-examination as to the basis of Dr. Griffith's opinion. For this reason, Abdnor claims he was harmed by the State's use of those statements in violation of article 46.-02, section 3(g).

Although we agree with Abdnor that the trial court erred in allowing Dr. Griffith to give an opinion as to Abdnor's sanity based upon inadmissible evidence, we find the error again to be harmless. As we have already noted, the substance of Abdnor's statements, inadmissible through Dr. Griffith, was properly in evidence through other witnesses. Thus, there was an alternate, equivalent, admissible basis for Dr. Griffith's opinion. There was also testimony by lay witnesses, including investigating officers, about Abdnor's statements and conduct at the time of the killing and shortly afterward from which the jury could have concluded that Abdnor was sane. *See Graham v. State*, 566 S.W.2d 941 (Tex. Crim.App.1978).

Based on the foregoing, we conclude that the trial court's error in allowing the State to use Abdnor's statements during a competency hearing in violation of article 46.02, section 3(g), was harmless. We overrule Abdnor's first point of error.

### Violation of Due Course and Due Process of Law

■ In point of error two, Abdnor contends that the trial court erred in introducing Dr. Griffith's testimony regarding their conversation because the information elicited was obtained in violation of due process and· due course of law. *See* U.S. const. amend. V; Tex. Const. art. I, §§ 10 and 19; Tex.Code Crim.Proc. arts. 1.05 (Vernon 1977), 38.22 and 38.23 (Vernon 1979). Abdnor's specific complaint is that Dr. Griffith misrepresented to him that information obtained in the competency examination would not be used against him. Dr. Griffith testified that at the beginning of his conversation with Abdnor:

I told him I would have to send a letter to Judge Ovard, stating my conclusions. That letter could not contain any details that he might tell me about himself, whether it related to the charge or to something else; that I could put some generalizations as to his behavior and his appearance, and where he was born, and general information like that, but specific information cannot go into that report.

Abdnor relies on this testimony for his contention that he was misled into making statements to Dr. Griffith.

Abdnor fails to point out, however, the testimony immediately after this statement:

BY [PROSECUTOR]:

Q: All right. Now, did you tell him anything with—you had already told him he didn't have the privilege. Did you tell him anything with respect to the things he might say to you in the course of your examination?

BY [DR. GRIFFITH]:

A: I certainly did. I told him that at anytime, anything that he told me, if it were subpoenaed by the court, could be used for him or against him. He understood this. He told me, also, that his attorneys certainly knew I was coming to examine him, and that he was perfectly willing to go on with the examination.

Dr. Griffith's statements become misleading only when read in the very narrow context Abdnor uses in his brief. The record shows that each time Dr. Griffith interviewed Abdnor, he read Abdnor his rights and explained that there was no doctor/patient privilege of confidentiality as to any statements Abdnor might make. No violation of due process or due course of law has been exhibited.

■ Assuming that Dr. Griffith's statements were misleading, however, Abdnor has waived any complaint regarding the adequacy of Dr. Griffith's warnings by pleading insanity. *Powell v. State*, 742 S.W.2d 353, 357–59 (Tex.Crim.App.1987). We overrule Abdnor's second point of error.

### Violation of Mental Health Privilege

■ In point of error three, Abdnor complains that the trial court erred in permitting the State to cross-examine Abdnor's medical expert, Dr. Lehrer, about information contained in certain hospital records in violation of the statutory mental health privilege, which was in effect at the time of his trial. *See* Act of May 17, 1979, ch. 239, 1979 Tex.Gen.Laws 512, *amended by* Act of June 19, 1983, ch. 511, § 2(a)(5), 1983 Tex. Gen.Laws 2970, 2973, *repealed by* Court of Criminal Appeals, order dated December 18, 1985, eff. Sept. 1, 1986, adopting Texas Rules of Criminal Evidence. Abdnor further complains that the trial court erred in permitting the State's medical expert, Dr. Griffith, to base his opinion regarding Abdnor's sanity on these medical records.

In 1983, the Legislature amended the mental health privilege to permit disclosure of mental health information where the patient is a victim, witness, or defendant in a criminal prosecution. *See* Act of June 19, 1983, ch. 511, § 2(a)(5), 1983 Tex.Gen.Laws 2970, 2973. This amendment has been embodied in the new Texas Rules of Criminal Evidence. TEX.RULE CRIM.EVID. 509. In *Smith v. State*, 740 S.W.2d 503 (Tex. App.—Dallas 1987, pet. granted on other grounds), this Court held that the mental health privilege was a procedural rule because it related solely to the admissibility of evidence. *See id.* at 512. In *Smith*, the appellant's first trial occurred when the privilege was in effect. The Court of Criminal Appeals later reversed the conviction on other grounds and remanded for a new trial. *Smith v. State*, 703 S.W.2d 641 (Tex. Crim.App.1985). When the case was retried in May of 1986, the mental health privilege had been amended to permit the introduction of a psychotherapist's testimony regarding conversations with patients who were defendants in criminal prosecutions. Tex.Rev.Civ.Stat.Ann. art. 5561h, § 4(a)(5) (Vernon Supp.1988). Therefore, according to *Smith*, the rule as it existed at the time of the second trial, not as it existed at the time of the first trial, controlled.

Assuming without deciding that Abdnor has demonstrated error under this point, we conclude that the error has been rendered harmless beyond a reasonable doubt because the change in the procedural rule of evidence would allow the admission of the hospital records at the second trial. We, therefore, overrule Abdnor's third point of error.

### Article 38.22 Violation

■ In points of error four and five, Abdnor contends that the trial court erred in permitting a police officer to testify about a conversation he had with Abdnor immediately following his arrest. In response to the prosecutor's request that he repeat the conversation, the officer testified:

I asked him why this had occurred, and the only answer I could get from him was to say, "Well, she was always arguing."

I requested to know, then, what they were arguing about. He said something about either she had or he thought she had aborted their child.

After that, I asked him again, "Well, what happened right then that would cause this problem?" And he said, "Well, she was just arguing all the time."

Abdnor urges that this was an oral confession given as a result of custodial interrogation and, therefore, inadmissible under art. 38.22, Texas Code of Criminal Procedure.

Abdnor also complains about the following testimony:

BY [PROSECUTOR];

Q: As far as his attitude of not being concerned about what had occurred, did you ask him exactly how the killing itself had taken place?

BY [OFFICER]:

A: Yes, I did.

Q: Would he tell you?

A: No.

Abdnor cites *Sanchez v. State*, 707 S.W.2d 575 (Tex.Crim.App.1986) and *Buitureida v. State*, 684 S.W.2d 133 (Tex.App.—Corpus Christi, 1984, pet. ref'd) to show that this

was an unlawful admission of his post-arrest, pre-Miranda silence.

We consider any error which may have resulted from the police officer testifying about his conversation with Abdnor to have been harmless. By pleading insanity, Abdnor takes the position that he did not have the requisite mental state to be guilty of murder. He does not, however, challenge the State's position that he killed the nurse. Because the conversation complained of tended to prove nothing more than that Abdnor physically committed the homicide, any error in admitting the substance of this conversation was harmless. *Heflin v. State*, 640 S.W.2d 58, 62 (Tex. App.—Austin 1982, pet. ref'd). We overrule Abdnor's fourth and fifth points of error.

### Extraneous Offense

■ In point of error six, Abdnor argues that the trial court erred in permitting the State to introduce evidence of an extraneous offense concerning an altercation between Abdnor and one of the State's witnesses. This witness, who had formerly been a fellow patient with Abdnor, testified that he had been afraid to testify because Abdnor had once pulled a knife on him. This witness also testified that his boss had told him that Abdnor had called and threatened to kill him. This testimony was elicited from the witness on redirect examination after defense counsel, on cross-examination, brought out the fact that this witness had originally told one of the prosecutors that he had lied about his conversation with Abdnor.

The general rule is that an accused may not be tried for some collateral crime or for being a criminal generally. *Rubio v. State*, 607 S.W.2d 498, 499 (Tex.Crim.App.1980). It is well recognized, however, that this rule must in some instances give way, as where the prosecution shows that the extraneous transaction is relevant to a material issue in the case and where its probative value outweighs its prejudicial potential. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983). The extraneous transactions in this case were relevant to

the witness's credibility and his ability to explain a prior inconsistent statement originally elicited by Abdnor's defense counsel. Simply, evidence that a witness has been threatened is admissible to explain prior inconsistent statements by the witness. *Williams v. State*, 604 S.W.2d 146, 150 (Tex.Crim.App.1980). We overrule Abdnor's sixth point of error.

### Admissions by the State

■ In point of error seven, Abdnor complains that the trial court erred in excluding the State's admissions that Abdnor was insane. At trial the prosecutor made references to Abdnor's being admitted to Baylor Hospital's Psychiatric Ward after his arrest for D.W.I. and possession of a handgun in 1979. Both cases had been dismissed on the motion of the Dallas County District Attorney after the D.A.'s office received a letter from a psychiatrist who was treating Abdnor. The letter stated that in the doctor's opinion, Abdnor was insane when he committed the offenses. The trial court in the instant case admitted the evidence that the offenses had been dismissed, but refused Abdnor's request to admit evidence that the offenses had been dismissed on motion of the District Attorney.

Abdnor cites the rule that voluntary admissions of a party in one judicial proceeding are admissible against him in other judicial proceedings to which he may be a party. *Chaney v. State*, 494 S.W.2d 813 (Tex.Crim.App.1973). Abdnor quotes a definition of "admission" as an

> acknowledgement or recognition by one party of the truth of some matters alleged by the opposite party, made in a pleading, the effect of which is to narrow the area of facts or allegations required to be proved by the evidence.

BLACK'S LAW DICTIONARY 68–69 (4th ed. 1957).

The statements appearing in the motions to dismiss do not constitute admissions by the State. At most, the State in its motions admitted that it was the doctor's opinion that Abdnor was insane when arrested. Accepting Abdnor's definition of admission,

there is no link between the doctor's opinion and any actual judicial admission by the State. Abdnor fails to point to any statement in the motions to dismiss in which the State acknowledged the truth of the doctor's assertion.

Further, assuming *arguendo* that dismissal by the State was a tacit admission that the doctor's assertion that Abdnor was insane when he committed the D.W.I. and possessory offenses was true, this assertion cannot be read as the State's admission that Abdnor was insane when he committed the homicide. Insanity, as an affirmative defense, requires a showing that "at the time of the *conduct charged,*" the accused did not know that his conduct was wrong or that he was incapable of conforming his conduct to legal requirements. *See* former section 8.01 of the Texas Penal Code, Act of June 14, 1973, ch. 399, § 8.01, 1983 Tex.Gen.Laws 883, 896, *amended by,* Act of June 19, 1983, ch. 454, § 1(a), 1983 Tex.Gen.Laws 2640, 2640. Abdnor was still required to prove by a preponderance of the evidence that he was legally insane at the time of the offense. Under the definition of "admission" which Abdnor cites, the State's admitting an ultimate fact issue in an earlier case would not "narrow the area of facts or allegations required to be proved by the evidence" in the case at bar. We overrule Abdnor's seventh point of error.

### Exemption from the Rule

■ In point of error eight, Abdnor contends that the trial court erred in denying his request to exempt his father, John Abdnor, Sr., from the rule excluding witnesses from the courtroom. Abdnor complains that because a Dallas County probate court had appointed his father as his legal guardian before trial, the court should have permitted his father to remain in court because "it is the duty of the guardian to defend his ward in a suit against the ward." For this proposition Abdnor cites *Knighton v. State,* 100 Tex. Crim. 516, 271 S.W. 906 (1925).

Knighton was a minor and complained about his father's exclusion from the courtroom during his trial. These are not the facts in Abdnor's case. We do not view *Knighton* as controlling.

Abdnor also cites *Texas Employers Insurance Ass'n v. Williams,* 522 S.W.2d 549 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.) for the purpose of showing that a guardian has an obligation to defend his ward against lawsuits. The court in *Williams* was applying the Texas Rules of Civil Procedure and the Texas Probate Code. Abdnor does not show how this case is applicable to a criminal prosecution, nor why it would be persuasive in showing how the trial court in the instant case abused his discretion. In the case before us, Abdnor was an adult and found by a jury to be competent to stand trial. We conclude that the trial court acted within his discretion in excluding Abdnor's father. We overrule Abdnor's eighth point of error.

### Prosecutorial Misconduct

■ In points of error nine, ten, eleven, and fourteen, Abdnor complains of several instances of prosecutorial misconduct which he claims were so egregious as to warrant reversal. Specifically, Abdnor complains of several instances in which the prosecutor, by way of sidebar remarks and innuendo, implied that Abdnor's father had used his considerable wealth to influence both the investigation and trial of this case. He also points to an instance in which the prosecutor appeared to intentionally disregard the trial judge's instruction not to bring up certain matters before the jury.

We have examined each of the instances called to our attention by Abdnor as well as the approximately 7,000 pages of other testimony in both the competency hearing and trial. While we agree that many of the prosecutor's statements before the jury exhibited conduct that was both unprofessional and disrespectful to the court, we do not believe that the statements, in the context of a seven week trial, were sufficiently prejudicial to warrant reversal. We note that after each of the statements, defense counsel either failed to object and, therefore, waived the point or objected and re-

ceived an instruction to disregard. A conviction will only be reversed where the record reflects a "course of conduct by the prosecutors which continually [brings] matters before the jury which [are] impermissible and [which] could only have been calculated to inflame and prejudice the minds of the jury." *Wright v. State*, 609 S.W.2d 801, 806 (Tex.Crim.App.1981); *Boyde v. State*, 513 S.W.2d 588 (Tex.Crim.App.1974). In our view, the record does not reflect "a continuing course of conduct" by the prosecutors in this case. At most, the record reflects several, but infrequent, instances of misconduct within a seven week trial. We overrule Abdnor's ninth, tenth, eleventh, and fourteenth points of error.

### Improper Argument

■ In point of error twelve, Abdnor argues that the prosecutor attempted to argue during his closing arguments what a missing witness would have said had he testified at trial. The following exchange took place:

> Prosecutor: Mr. Durand's testimony, ladies and gentlemen, certainly would not be helpful to this defendant if the defendant....
>
> Defense Counsel: Excuse me.
>
> Prosecutor: ... ha[d] chosen to call him.

Abdnor then objected that neither side can relate what a missing witness could say. The trial court sustained the objection and instructed the jury to disregard. Abdnor moved for a mistrial, but his motion was denied.

Abdnor contends that the State's argument was highly prejudicial because one of the witnesses testified that Durand, the witness's boss, had told the witness that Abdnor had called and threatened to kill the witness. Thus, Abdnor argues that the State, by commenting on Abdnor's failure to call Durand, implied that Durand would back-up the witness's testimony.

■ We view the prosecutor's argument to be nothing more than a reasonable deduction from the evidence. *Darden v. State*, 629 S.W.2d 46, 52 (Tex.Crim.App. 1982). Moreover, under Texas law the prosecutor may comment on the defense's

failure to call a material witness and may draw an inference from that failure that the testimony would have been unfavorable to the defense. *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Crim.App.1979), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed. 2d 846 (1980). Therefore, we do not view the prosecutor's argument as error. Additionally, we conclude that any impropriety resulting from the comment was cured by the trial court's instruction to disregard. We overrule Abdnor's twelfth point of error.

■ In point of error thirteen, Abdnor argues that the trial court erred in permitting the prosecutor to argue during summation that the law provides that "a man intends the natural and probable consequences of his act." It is, however, a well-settled rule of law that every person is assumed to intend the natural and probable consequences of his acts and that this intent is a reasonable deduction for a jury to make. *United States v. Wilkinson*, 460 F.2d 725 (5th Cir.1972); *Duhon v. State*, 136 Tex.Crim. 404, 125 S.W.2d 550, 552 (1939). Further, we find that the prosecutor's statement was a proper answer to Abdnor's insanity defense under *Darden v. State, supra*, and overrule Abdnor's thirteenth point of error.

Having overruled Abdnor's points of error, we AFFIRM his conviction.