**Ex parte Stephen COMBS.**

**No. 53485.**

Court of Criminal Appeals of Texas.

Jan. 12, 1977.

Art L. Keinarth, Sally Ray, Huntsville, for appellant.

Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is a habeas corpus proceeding instituted under the provisions of Article 11.07, Vernon's Ann.C.C.P. Petitioner contends that he has been denied due process and equal protection of the law in that he has been denied his appeal from a conviction for murder to the Court of Criminal Appeals as he is an indigent and has been denied an appointed counsel on appeal.

The record reflects that on August 14, 1970 petitioner was indicted for murder with malice in Cause No. 4086 in the District Court of Midland County. During a separate sanity trial in August, 1970, he was found incompetent to stand trial by a jury and was committed to Rusk State Hospital. The petitioner was found competent to stand trial by a jury on May 15, 1972 in a restoration hearing. On June 8, 1972 the jury in the trial of Cause No. 4086 returned a verdict of guilty of the offense of murder and assessed petitioner's punishment at twenty-five (25) years. It appears petitioner was sentenced and gave notice of appeal. On May 14, 1973 the court granted a new trial and petitioner was released on a $10,-000 bond with his father and uncle as sureties.

On May 17, 1974 the petitioner was again tried on the same charge. The jury convicted, and the punishment was assessed at fifteen (15) years. On June 17, 1974 appellant was sentenced and gave notice of appeal and remained on bail. Sometime in July, 1974 petitioner's father "went off" the bond and petitioner was arrested.

On September 30, 1974 the petitioner filed a pauper's oath and requested the appointment of counsel on appeal. The request was denied. There does not appear to have been any hearing on the question of indigency. On the same date appellant requested his case remain "on appeal" but asked to be sent to the Department of Corrections. No appellate record of any kind was ever forwarded to the Court of Criminal Appeals. See requirements of Article 40.09, § 1, Vernon's Ann.C.C.P.

On January 16, 1976 petitioner signed and swore to an application for a writ of habeas corpus claiming the deprivation of counsel on appeal. On May 3, 1976 the trial court signed an order refusing to entertain the application. On May 24, 1976 the Court of Criminal Appeals ordered the trial court to conduct a hearing on indigency, and if the court found that appellant was indigent to appoint appellate counsel and provide a free record. After an evidentiary hearing, the court entered findings that petitioner was not indigent. The Court of Criminal Appeals is, however, not bound by the findings of the trial court. See *Ex parte Bazemore,* 430 S.W.2d 205 (Tex.Cr.App. 1968); *Ex parte Swinney,* 499 S.W.2d 101 (Tex.Cr.App.1973); *Ex parte Bagley,* 509 S.W.2d 332 (Tex.Cr.App. 1974).

At the time of the evidentiary hearing on June 16, 1976 petitioner was shown to be 31

years of age. He testified that he was arrested July 17, 1970, and that in August, 1970 he was committed to Rusk State Hospital after a competency hearing, at which he was represented by retained counsel, two Midland attorneys. He related that about this time he began receiving a monthly check of $495.00 from the Veterans Administration for disabilities. After his restoration ·hearing in May, 1972, appellant was tried the first time for murder in June, 1972 and was convicted. At such trial he was represented by the same two Midland lawyers. Petitioner's father was shown to have paid for counsel and for expert witnesses used at the first trial in the amount of $16,000.00. Petitioner was to repay his father from his monthly disability checks. For the purposes of appeal from the first conviction, the petitioner personally paid $1,400.00 for a transcription of the court reporter's notes. In May, 1973 the trial court granted a new trial. Thereafter, the appellant was released on a $10,000.00 bond signed by his father and his uncle at no cost to petitioner. Petitioner testified he lived in Dallas and Denton until time of his next trial on May 17, 1974, and that during such time he was unemployed and lived off his disability checks. He related that he retained a Dallas lawyer for $10,000.00 for his second trial, paying $7,000.00 of the fee out of what he had accumulated out of his disability checks and promising to pay the balance of $3,000.00. There appears to have been $2,500.00 to $3,000.00 spent on expert witnesses for the second trial. The money was arranged for by his father. After his second trial and conviction, petitioner testified that notice of appeal was given, but that at the time he had about $500.00 to pay for the transcription of the court reporter's notes and counsel on appeal, and that he was still indebted to his Dallas lawyer, who had been retained for trial purposes alone, and he was still indebted to his father for expenses of his first trial. In July, 1974 his father "went off" the bond after a "falling out" and petitioner was then confined. After he was confined, petitioner filed a pauper's oath asking the ap-

pointment of counsel on appeal. He testified at the time he was heavily indebted and had only about $500.00. The motion for appointment of counsel was denied. He related the $500.00 would have only been a deposit on the transcription of the court reporter's notes and that he could not pay the balance. At the time of the evidentiary hearing on June 16, 1976, petitioner testified he had approximately $600.00 in a bank, owned no other property, nor had any stocks or bonds, etc. He related that each month his disability checks had been divided to pay the balance of his Dallas lawyer's fee, which had been paid off, and to pay his debt to his father. He explained that on June 1, 1975 his disability check had been cut to $280.00 per month and that he had been informed it would be reduced to $188.00 per month on August 1, 1976.

Petitioner's father, Max Combs, testified that the petitioner owed him $17,000.00 at the time he "went off" the bond; that he had decided he could not financially assist the petitioner any longer. He related that since that time the petitioner had repaid him $3,100.00 and had paid the balance of $3,000.00 to the Dallas lawyer. Apparently the disability checks were sent to petitioner's father, who made the payments.

The State offered no evidence other than eliciting the amount of the disability checks on cross-examination.

The trial court found that from August, 1970 until June 1, 1975 the petitioner had been receiving a disability check of $495.00 monthly and that after June 1, 1975 until the date of the evidentiary hearing (June 16, 1976) he had been receiving a check of $280.00 per month; that from August, 1970 until the evidentiary hearing he had been somewhere in confinement except from May, 1973 until July, 1974 and while in confinement all his needs as to shelter, clothing, food, etc., was provided by the State or County. He found that during such period petitioner had received somewhere between $30,000.00 and $36,000.00 in disability checks. The court further found that following the second conviction and after petitioner's re-arrest in July, 1974 pe-

titioner had between $500.00 and $600.00 which was a sufficient down payment for the court reporter to begin a transcription of his notes, and that if the next two months' disability checks had been used the appellate record could have been paid for within that time period. The trial court found that the petitioner voluntarily chose not to apply this money towards the perfection of his appeal. The record reflects that after his confinement in the Department of Corrections appellant reduced his debt to his father by $3,100.00 and paid the balance of his fee ($3,000.00) to his attorney at the second trial. The court also found that petitioner's agreement to repay his father was an oral one not subject to any specific time requirement for repayment. The court further found that at the time of the evidentiary hearing petitioner had about $600.00 in a bank and was still receiving $280.00 monthly disability checks. The court concluded petitioner was not an indigent for the purpose of appeal either at the present time or on September 30, 1974.

In *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the United States Supreme Court held that indigent defendants were denied equal protection of the law where the merits of the one appeal they had from their convictions were decided without benefit of counsel. See also *Lopez v. State,* 486 S.W.2d 559 (Tex.Cr.App. 1972); *Currie v. State,* 516 S.W.2d 684 (Tex. Cr.App. 1974); *Hawkins v. State,* 515 S.W.2d 275 (Tex.Cr.App. 1974); *McMahon v. State,* 529 S.W.2d 771 (Tex.Cr.App. 1975). *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), held that an indigent is entitled to a free transcript on appeal. See also Article 40.09(5), Vernon's Ann.C. C.P.

In *Conrad v. State,* 537 S.W.2d 755 (Tex. Cr.App. 1976), it was observed that there are no standards set out for the guidance of trial judges in determining the actual indigency of a defendant for the purposes of an appeal, and that each case must be decided upon its facts. See *Roberson v. State,* 538 S.W.2d 788 (Tex.Cr.App. 1976); *Barber v. State,* 542 S.W.2d 412 (Tex.Cr.App. 1976).

Some guidelines have emerged from the decisional law. In *Simmons v. State,* 511 S.W.2d 308 (Tex.Cr.App. 1974), this court held that because the defendant made a $5,000.00 appeal bond, that fact *alone* did not warrant the trial court in refusing to appoint counsel on appeal for the defendant in absence of a hearing. See and cf. *Foley v. State, 514 S.W.2d 449 (Tex.Cr.App. 1974).* See also Roberson v. State, *supra;* Barber v. State, *supra.*

In *Conrad v. State, supra,* this court, speaking through Judge Douglas, wrote:

"Parents of appellant are not legally bound to pay for the expenses of an appeal. Even though they put up a cash bail for appellant's appearance, it is not shown that appellant has any way to use those funds.

"Sometimes parents run out of funds and cannot help a child who has been charged with committing crimes. In some cases parents may have funds but will not furnish them for counsel and for the record. If they have money, this does not mean that a defendant is not indigent.

"Trial judges are often faced with questions of indigency after bail has been made and after an attorney has been paid a fee. Even though there has been retained counsel at the trial, this does not bind counsel to furnish a record at his own expense or to handle the appeal without a fee. *The question of indigency for appeal purposes is to be determined at the time for the appeal and not at the time of the trial.*" (Emphasis Supplied.) See also *Roberson v. State,* supra.

In the instant case the petitioner was accorded no appeal despite his timely given notice of appeal. Article 40.09, § 1, Vernon's Ann.C.C.P., requires the clerk of the court to include in the appellate record "whether designated or not copies of the material pleadings, material docket entries made by the court, the charge, verdict, judgment, sentence, notice of appeal, any appeal bond, all written motions and pleas and orders of the court and bills of excep-

tion." This clerk did not do so.[1] Petitioner's father told the court reporter not to prepare the transcription of the court reporter's notes or at least not to look to him for payment. Appellant's counsel, apparently employed only for the second trial alone, did not bring this to the trial court's attention and asked to withdraw. Appellant filed a pauper's oath, including a request for the appointment of counsel. The trial court denied the same without a hearing. Appellant requested to be sent to the Department of Corrections and testified he understood his only appeal from the court's refusal to appoint counsel was through habeas corpus proceedings to be brought by the staff counsel for the inmates. Thereafter, he applied what funds he did receive toward the payments of debts. See and cf. *Roberson v. State*, supra. Thus it appears many factors were involved which prevented the appeal of petitioner's conviction.

■ Under the circumstances presented, we conclude that the petitioner is entitled to an out-of-time appeal with appointed counsel. It appears that while without sufficient funds for a fully effective appeal the petitioner has sufficient funds accumulated to pay for or to pay at least a portion of the transcription of the court reporter's notes.[2] The trial court, upon receipt of this court's mandate, should determine the exact amount of petitioner's available funds. If such funds are sufficient to cover the cost of the transcription, then it is the responsibility of the petitioner to secure such transcription. If the funds are not sufficient to pay the full cost of the transcription, the county should be ordered to pay the balance. After counsel has been appointed and transcription obtained, the provisions of Article 40.09, Vernon's Ann.C.C.P., should be followed in order to accord the petitioner his appeal.

The relief prayed for above is granted in accordance with the foregoing opinion.

It is so ordered.

1. If the record had reached this court with a pauper's oath, etc., the matter now before the court could have been clarified at a much earlier date.

2. During the hearing petitioner's father testified it would take $1,100.00 to secure the transcription of the court reporter's notes. The court reporter did not testify.