**John Howard ABDNOR, Relator,**

**v.**

**John OVARD, Judge 265th Judicial District Court, Respondent.**

**No. 05–81–01289–CR.**

Court of Appeals of Texas, Dallas.

June 16, 1982.

Rehearing Denied July 13, 1982.

Ron Goranson, Dallas, for relator.

Henry M. Wade, Dist. Atty., S. Michael McColloch, Hal E. Turley, Asst. Dist. Attys., Dallas, for respondent.

Before CARVER, SPARLING and VANCE, JJ.

CARVER, Justice.

John Howard Abdnor has applied to this court for a writ of mandamus to secure a statement of facts in his appeal from a criminal conviction, at the cost of the county, on the ground that he is an indigent. We deny relief.

Abdnor was tried and convicted of murder and sentenced to life imprisonment. After sentencing, Abdnor gave notice of appeal and filed an affidavit of indigency in the trial court. At the indigency hearing conducted by the trial court, it was shown that (1) the statement of facts would cost $24,500.00 and (2) that Abdnor did not, to the knowledge of his father or an accountant (the only witnesses as to Abdnor's indigency) have real or personal property which could be sold to pay for the record for use in his appeal. The trial court on such evidence denied indigency status. Abdnor contends that such evidence compels the opposite conclusion and prays that the trial judge be directed by this court to order the reporter to prepare the statement of facts at the county's expense.

Abdnor's indigency proceeding in the trial court was authorized by art. 40.09(5) Tex. Code Crim.Pro.Ann. (Vernon 1979) which provides:

"A party desiring to have included in the record a transcription of notes of the reporter shall have the responsibility of obtaining such transcription and furnishing same to the clerk in duplicate in time for inclusion in the record and the defendant shall pay therefor. The court will order the reporter to make such transcription without charge to defendant if the court finds, after hearing in response to affidavit by defendant that he is unable to pay or give security therefor. *Upon certificate of the court that this service has been rendered, payment therefor shall be made from the general funds by the county in which the offense is alleged to have been committed in a sum to be set by the trial judge. The court reporter shall report any portion of the proceedings requested by either party or directed by the court.*" [emphasis added]

A hearing was conducted as to the "truthfulness" of Abdnor's affidavit as approved in *Warminski v. Dear*, 608 S.W.2d 621 (Tex. Crim.App.1980). Abdnor offered the court reporter's testimony as to the record and its cost, and offered two witnesses in an effort to support the "truthfulness" of his affidavit of indigency.

Sandra Day testified that she was the official court reporter during Abdnor's murder trial; that she took all the testimony of the competency hearing, pretrial hearings, trial, punishment hearing, arguments, and motion for new trial hearing; that the statement of facts was estimated to be 7,000 pages; and the cost of the statement of facts was $24,500.00. On cross-examination, Sandra Day testified that *during such* several proceedings in the trial court she had prepared a number of excerpts from the testimony for the defense for which she had been paid over $1,000.00; and that after the conclusion of the trial Abdnor's father had paid her $7,000.00 toward "a personal copy of the transcript."

Abdnor's father testified that he had been appointed guardian of Abdnor by the Probate Court; that, as guardian, he had become familiar with Abdnor's estate and ability to earn income; that Abdnor had "a negative net worth of approximately $10,-000.00;" that Abdnor had borrowed in excess of the present value of future life insurance renewal commissions; and that "I don't believe he could pay for anything, sir." On cross-examination, Abdnor's father testified that Abdnor ceased working for his (the father's) insurance company on "the day he was convicted," since the conviction forfeited his son's insurance agent's license; that, since his conviction, Abdnor had no income, no life insurance, no household furnishings, no real estate and no stocks or bonds; that he had paid for his son's counsel at trial and on the current appeal.

Jere Gravely testified that "I work for Mr. Abdnor's (father) companies as an accountant;" that she kept financial records and prepared tax returns for Abdnor; that the exhibits she tendered were Abdnor's tax returns and employer's information return for Abdnor for 1978, 1979 and 1980; and, as to the existence of income other than that reported, she answered, "[N]ot that we know of." On cross-examination Jere Gravely testified that Mr. Abdnor's son was "self-employed" for tax purposes but was covered as an "employee" in the group life insurance of Banker's Commercial Life Insurance Company.

Although Abdnor's affidavit initiated the trial court's inquiry, and such affidavit's "truthfulness" was the subject of the inquiry, Abdnor himself did not testify.

■ Abdnor's application asserts that this court has jurisdiction to grant the mandamus relief sought, relying on article 1823 Tex.Rev.Civ.Stat.Ann. (Vernon 1964), construed as directed by art. 5 § 6 Tex.Const. (Vernon Supp.1982). Article 1823, as it appears in the statutes, provides:

"Said courts and the judges thereof may issue writs of mandamus and all other writs necessary to enforce the jurisdiction of said courts."

Article 5 § 6 of the constitution, effective September 1, 1981, provides, in pertinent part, that:

"... All constitutional and statutory references to the Courts of Civil Appeals shall be construed to mean the Court of Appeals."

The respondent, Ovard, challenges our jurisdiction relying upon art. 4.03 Tex.Code Crim.Pro.Ann. (Vernon 1977), which art. 4.03 provides:

"The Court of Appeals shall have *appellate* jurisdiction coextensive with the limits of the State in all criminal cases. This Article shall not be so construed as to embrace any case which has been appealed from any inferior court to the county court, the county criminal court, or county court at law, in which the fine imposed by the county court, the county criminal court or county court at law shall not exceed one hundred dollars." [emphasis added]

Ovard argues that Abdnor's application is an "original" proceeding, rather than an "appellate" proceeding, consequently, the Court of Criminal Appeals is the only court which can act on Abdnor's application. Abdnor responds that our court has mandamus jurisdiction because he has given notice of appeal and the record is necessary for the exercise of that jurisdiction, or "to enforce" that jurisdiction, consequently, the mandamus sought is *appellate* rather than *original*. We hold that this court has statutory jurisdiction to entertain an application for mandamus to secure a statement of facts in a cause on appeal in our court by virtue of art. 1823, *supra*, whether in a civil or a criminal cause, in order to enforce our *appellate* jurisdiction.

We perceive that our holding is contrary, in part, to the holding in *Ex parte Smith*, 624 S.W.2d 671 (Tex.Civ.App.—Beaumont 1981, no writ). In *Smith* the court held that the Courts of Appeal did not have statutory jurisdiction of mandamus proceedings, but did have "ancillary" jurisdiction "to protect and to enforce our own jurisdiction." We rest our decision upon art. 5 § 6 of the constitution and art. 1823,

i.e., a "statutory" basis, rather than upon an "ancillary" basis as held in *Smith*, and, to that extent, we disagree with *Smith* in its reasoning, but not in its result. We hold that this court has statutory mandamus jurisdiction to enforce our appellate jurisdiction.

■ We reason that in order to exercise our appellate jurisdiction, a statement of facts is necessary. *See Smith, supra*, and cases cited therein. Whether the statement of facts on appeal is to be furnished at the expense of the accused, or at the expense of the county, is first to be determined in the trial court in both civil or criminal proceedings. In the past, such a trial court determination has, in civil cases, been reviewed by the Courts of Civil Appeals, as seen in *O'Neal v. Stovall*, 580 S.W.2d 130 (Tex.Civ. App.—Austin 1979, no writ), and, in criminal cases, has been reviewed by the Court of Criminal Appeals as seen in *Castillo v. State*, 595 S.W.2d 552 (Tex.Crim.App.1980). Since it is undisputed that "appellate" jurisdiction in both civil and criminal cases (save death penalty cases) now rests in the Courts of Appeal; and since fixing the responsibility for the furnishing of the necessary statement of facts is inextricable from the exercise of that appellate jurisdiction of the Courts of Appeal; we conclude that we must entertain Abdnor's application for writ of mandamus and fix the responsibility to furnish the statement of facts either upon Abdnor, if his affidavit of indigency was not proved truthful, or upon the county, if his affidavit was proved truthful.

■ Abdnor, affirmatively asserting his indigency, had the burden of the issue. *See Zanghetti v. State*, 582 S.W.2d 461 (Tex.Crim.App.1979). The issue must be decided upon a case by case analysis. *Stephens v. State*, 509 S.W.2d 363 (Tex.Crim. App.1974). The issue is a matter of the defendants financial status at the time of appeal, not at the time of trial. *Barber v. State*, 542 S.W.2d 412 (Tex.Crim.App.1976). However, in *Stephens, supra*, the court acknowledged that "there appears to be no firm standards set out in our statutes, *see* Tex.Code Crim.Pro.Ann. art. 40.09(5) (Ver-

non Supp.1982), nor case law providing guidance to trial judges in determining actual indigency of a criminal dependent." 509 S.W.2d at 365.[1] Subsequent criminal cases examined do not reflect the adoption of any "firm standard" although *Castillo, supra,* did find that testimony of the accused as to his modest job, the absence of outside income, the absence of material possessions, unpayable debt, and unsuccessful attempts to borrow money constituted a "prima facie" showing of indigency. In the absence of a firm standard from either the statute or prior cases, but consistent with *Castillo,* we adopt the standard expressed by this court in *Ex parte Hennig,* 559 S.W.2d 401 (Tex.Civ.App.—Dallas 1977, no writ). Hennig had been held in contempt for disobedience of a child support order and was confined in jail until he should purge himself by full payment. Hennig sought relief from confinement by habeas corpus in this court on the ground that the evidence showed that he was involuntarily indigent. In order to review the evidence in Hennig, this court adopted a "firm standard" of indigency by requiring that:

"In order to establish the inability to pay, the relator must show not only that he lacks the financial resources to pay the delinquency, but also that he knows of no source from which the sum might be obtained. This ultimate fact can be established by proof of the following:

(1) that the relator lacks sufficient personal or real property which could be sold or mortgaged to raise the needed sum; and

(2) that the relator had unsuccessfully attempted to borrow the sum from financial institutions such as banks, credit unions, and loan companies; and

(3) that the relator knows of no other source, including relatives, from whom the sum could be borrowed or otherwise secured.

*See Ex parte Rohleder,* [424 S.W.2d 891] *supra* at 892; *Ex parte Hart,* [524 S.W.2d 365] *supra* at 366. Of course these are only conclusory elements which must be supported by specific evidence according to the facts of each particular case."

We see no distinction between indigency which would excuse a father's support of his children so as to cast such support upon society and indigency which would excuse an accused from paying for a record to pursue his appeal so as to cast the cost of that record upon society. Likewise, there should be no distinction between the proof necessary to show indigency in either instance.

■ Examining the record in the light of the foregoing authorities, we find that the person having the most certain knowledge on the issue, Abdnor himself, failed to testify that his affidavit was in fact, truthful, or to testify at all. The only witnesses offered supporting Abdnor's indigency were his father, who was also his guardian, and his father's accountant. The father's testimony was limited to his discovery of his son's assets since his appointment as Abdnor's guardian. The father's testimony constituted at least "some" evidence of the proof required by the first test in *Hennig,* that is, "personal or real property which could be sold or mortgaged." However, the father's testimony failed to offer any proof as to the second and third test of *Hennig,* that is, "unsuccessful efforts to borrow from financial institutions" or "no other source, including relatives, from whom the sum could be borrowed or otherwise secured." The accountant's testimony, and exhibits, reflected only income in 1978, 79 and 80 (the trial court hearing was in December 1981) and failed to directly address any of the tests provided by *Hennig.* We conclude (1) that since Abdnor offered no testimony as to *his* (as opposed to what a third party might be able to discover) lack of financial resources; or as to *his* unsuccessful efforts

1. In civil cases, under Rule 455, Tex.Rev.Civ. Stat.Ann. (Vernon Supp.1982) the supreme court has declared, "the test for determining to proceed in forma pauperis, the appellant would be unable to pay if he really wanted to and

made a good faith effort to do so. *Pinchback v. Hockless,* 139 Tex. 536, 164 S.W.2d 19, 20 (1942)," *Allred v. Lowry,* 597 S.W.2d 353, 355 (Tex.1980).

to borrow from financial institutions; or as to *his* inability to borrow or otherwise secure the funds from other sources, including relatives; and (2) since the testimony other witnesses offered failed to exclude two out of the three sources which, under *Hennig*, must be excluded to support an indigency finding, the trial court was justified in concluding that Abdnor failed to meet his burden to establish the truthfulness of this affidavit of indigency. We hold that the evidence did not compel the trial court to a conclusion that Abdnor's affidavit was truthful but, instead, supported the opposite conclusion when neither he, nor his witnesses, met the *Hennig* tests of ability to pay.

■ Abdnor argues that he should neither be required, nor permitted, to testify as to his indigency since he is a person of such mentality as to cause the probate court to appoint a guardian in his behalf. We cannot agree for two reasons. First, our record reflects that Abdnor was specifically found competent to stand trial for the crime which he was charged. Abdnor's competency is presumed unless such hearing establishes otherwise. Article 46.02, Tex.Code Crim.Pro.Ann. (Vernon 1981). Since the hearing established Abdnor's competency, his competency is presumed to continue until a subsequent hearing in the court trying his criminal case, if sought, should establish otherwise. Since Abdnor sought no additional hearing, we must presume he was still competent at the time of his indigency hearing. Second, the fact that a guardianship had been imposed upon Abdnor in the probate court would not have necessarily disqualified Abdnor as a witness in the indigency hearing. *Jackson v. State*, 403 S.W.2d 145 (Tex.Crim.App.1966), *cert. denied*, 385 U.S. 938, 87 S.Ct. 301, 17 L.Ed.2d 217 (1966). This court has held, in *T. E. I. A. v. Eubanks*, 240 S.W.2d 811 (Tex.Civ.App.—Dallas 1951) *rev'd on other grounds*, 151 Tex. 67, 246 S.W.2d 467 (1952), that a witness was not disqualified merely because it was shown that he was incarcerated (on similar findings by a Mississippi probate court) in the Mississippi State Insane Asylum, but only on a showing that his mental disorder affected the capacity to observe, recollect, or narrate the events in question. We hold that Abdnor was "permitted" to testify at his indigency hearing inasmuch as he was not disqualified as a witness, and Abdnor was "required" to so testify in the sense that he had the burden to make the showings required by *Hennig*.

Since the proof offered by Abdnor at his indigency hearing failed to impose the cost of the statement of facts upon the county, the cost thereof remains upon Abdnor by virtue of art. 40.09(5), Tex.Code Crim.Pro. Ann. (Vernon 1979).

Writ denied.