**Victor CARDONA, Relator,**

v.

**Honorable Marvin F. MARSHALL, Judge, Respondent.**

No. 68992.

Court of Criminal Appeals of Texas, En Banc.

July 21, 1982.

Stephen L. Rohde, Tulia, for relator.

Robert Huttash, State's Atty., Austin, for the State.

■

## OPINION

McCORMICK, Judge.

This is an application for writ of mandamus asking this Court to compel Judge Marvin F. Marshall of the 64th Judicial District Court of Swisher County, to appoint an attorney to represent relator in the appeal of his conviction for murder and to further compel Judge Marshall to order the court reporter to provide relator with a free statement of facts.

Relator was found guilty of murdering his wife and sentenced to ninety-nine years' confinement. At trial, relator was represented by court-appointed counsel. Evidence on this petition shows that sometime after relator was arrested, but prior to the trial of this cause, relator received $12,979 from a profit-sharing plan. Relator gave the money to one of his daughters to use for the support of his other children. Relator was sentenced to the Texas Department of Correctios on January 27, 1982. On February 4, 1982, relator filed his notice of appeal. On February 8, 1982, he filed an affidavit of indigency. A hearing on relator's affidavit was held before Judge Marshall, who found that relator was not truly indigent.

■ It has been observed that there are no standards to guide trial judges in determining the actual indigency of a defendant, and that each case must be decided upon its facts. *Ex parte Bain*, 568 S.W.2d 356 (Tex. Cr.App.1978); *Ex parte Combs*, 545 S.W.2d 171 (Tex.Cr.App.1977); *Conrad v. State*, 537 S.W.2d 755 (Tex.Cr.App.1976); *Roberson v. State*, 538 S.W.2d 788 (Tex.Cr.App.1976); *Barber v. State*, 542 S.W.2d 412 (Tex.Cr. App.1976). The question of indigency for appeal purposes is to be determined at the time of the appeal and not at the time of trial. *Ex parte King*, 550 S.W.2d 691 (Tex. Cr.App.1977). With these limited guidelines in hand, we will examine the facts adduced at the hearing on relator's indigency.

■ Relator initially testified that he had $26.00 to his name. He then testified that, although he had received $12,979 from a profit-sharing plan, he no longer had control or ownership of the money since he had given it to his family. In response to questions posed by the court, relator answered the following:

"Q. How much money did you receive?

"A. . . . Twelve thousand and nine-hundred and seventy-nine dollars, I believe.

"Q. All right. *And you gave all that to your kids rather than to pay for an attorney or to pay for the cost of your trial?*

"A. *Yes, sir.* It's all I had to leave them, and that's how come I give it to them.

"Q. And you're telling me you have no access to that money at this time?

"A. No, sir.

"Q. Have you made a completed gift? In other words, have you transferred all title and ownership to that money to them?

"A. Yes, sir.

"Q. Do you have any way to get it back?

"A. They are under their name.

"Q. Well, do you have any way to get this money back?

"A. I tell my daughter, whatever happens to me, it's all right, just keep the money for the kids.

"Q. Well, is she just holding it for you, then, until you decide what happens to you? Is that what you are telling me.?

"A. No. I tell them that money is going to be for them.

"Q. Have you paid—filed a gift tax return for to transfer over this money?

"A. Not yet.

"   * * *

"Q. And you're telling me you can't part (sic) of that money to hire an attorney to represent you on this appeal and to furnish copies of the papers to the Court for your appeal? Is that what you're telling me?

"A. Well, I tell my daughter to, no matter what happens to me, to save that money for the kids, you know, for school and what—..." (Emphasis added)

Judge Marshall found that relator had transferred the sum of $12,979.00 so as to divest himself of funds which could have been used to retain counsel. In addition, Judge Marshall found that the funds were still available to relator for use in his appeal but that relator chose not to use them. We are inclined to agree with Judge Marshall.

Nowhere in the record is there anything to show that relator's gift to his children was an irrevocable transaction. Rather, it appears relator merely handed his daughter the large sum of money and told her to use it to the benefit of relator's other children. There is no proof before this Court that the money was not available for relator's use. Thus, we find that relator is not indigent and, thus, is not entitled to appointment of counsel on appeal nor is he entitled to the provision of a statement of facts at no cost.

■ This case brings up an important question which has not yet been decided by this Court: May a person transfer his assets while awaiting trial, after alleging indigency, so that he may make applications for appointment of counsel, a free transcript, and a free statement of facts? We think not. Were this Court to hold otherwise, the counties of this State would be overburdened with the task of providing these services to truly non-indigent persons.

"True a defendant should not be denied appointment of counsel solely because other members of his family have assets and income.... But a defendant's claim of indigency certainly should be rejected when he puts his own assets into his relatives' names and those assets remain at his disposal." *United States v. Rubinson*, 543 F.2d 951 (2nd Cir. 1976), cert.

denied, *Chester v. United States*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124, and *Reynolds v. United States*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976), at p. 964.

Having found that relator has sufficient assets at his disposal to retain an attorney on appeal and to pay for the statement of facts, the requested relief is denied.

ROBERTS, CLINTON and TEAGUE, JJ., dissent.