**John Howard ABDNOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–01289–CR.**

Court of Appeals of Texas, Dallas.

Oct. 18, 1984.

Rehearing Denied Jan. 21, 1985.

Ronald L. Goranson, Oscar H. Mauzy, Dallas, for appellant.

S. Michael McCulloch, Hal E. Turley, for trial court judge.

Karen Chilton Beverly, Asst. Dist. Atty., Dallas, for appellee.

Before CARVER, ROWE and SHUMPERT, JJ.

CARVER, Justice.

John Howard Abdnor complains that the trial court erroneously denied him the status of an indigent to the prejudice of his appeal from a conviction of murder because he could not secure a statement of facts in support of his appeal and to demonstrate his supposed grounds of error. Abdnor prays that we correct the trial court's error by abating Abdnor's appeal until the statement of facts is prepared and filed. We find no error in the trial court's ruling denying Abdnor the status of an indigent; we decline to abate Abdnor's appeal; and, in the absence of an appellant's brief in behalf of Abdnor urging any error in his trial and conviction, affirm Abdnor's conviction.

Abdnor's present complaint, *by appeal*, was preceded by the same complaint urged *by mandamus*. This court considered and denied the mandamus application on its merits. *Abdnor v. Ovard*, 635 S.W.2d 864 (Tex.App.—Dallas 1982). The Court of Criminal Appeals in a discretionary review disagreed with the rationale of our opinion but affirmed the denial of relief because mandamus was the incorrect method of review of the trial court's order. *Abdnor v. Ovard*, 653 S.W.2d 793 (Tex.Crim.App. 1983). Consequently, Abdnor now reurges his complaint as a part of his direct appeal of his trial and conviction. For this appeal, this Court has been furnished a transcript of all pleadings and orders filed or entered in the trial court; a statement of facts limited to the hearing conducted by the trial court to determine the truthfulness of Abdnor's affidavit of indigency; and Abdnor's "Appellant's Brief" which is limited to the indigency issue. The appellee, the State of Texas, has responded to the indigency issue as well as urging affirmance for the absence of any ground of error complaining of Abdnor's trial and conviction.

The record of the indigency hearing reflects the testimony of the official court reporter, who served during Abdnor's trial and conviction, that the record was estimated at 7000 pages, costing $24,500, and that a "personal copy" had been prepared for and paid for by Abdnor's father. The same record also reflects that Abdnor's father testified that he was the appointed guardian of Abdnor's "person and property"; that he, and others, had made a diligent search for "income producing assets" belonging to Abdnor but found nothing but what was shown on "that statement" (appendix 1 to this opinion); and that he had paid personally, not as his son's guardian, for all of his son's expenses for the attorneys and the trial and the "personal copy" of the statement of facts. The same record reflects the testimony of an accountant, working for Abdnor's father and his insurance companies, that Abdnor's income tax returns for 1980–79–78 were prepared by her from the insurance companies' Internal Revenue Service report No. 1099 as to compensation paid to Abdnor; that Abdnor's reported income was 1980—$5,716.79, 1979 —$3,523.67, and 1978—$4,028.41; and that she knew of no other income. Although Abdnor was the affiant whose truthfulness was under inquiry, he did not testify. Upon this record, and without specific findings having been requested or filed, the trial court denied Abdnor the status of an indigent.

As directed by the opinion of the Court of Criminal Appeals in *Abdnor, supra*, we must determine whether Abdnor is entitled to a free transcript of the evidence. 653 S.W.2d at 794. For such determination "no rigid standard exists." *Id.* The determination of indigency, or entitlement to a free transcription, is no "mere ministerial act." 653 S.W.2d at 794. By implication, then, such determination is "judicial" and must rest upon evidence credible to the fact finder. The proffer of such evidence is the burden of the affiant. *See Zanghetti v. State*, 582 S.W.2d 461 (Tex.Crim.App. 1979). Such evidence must show indigency as well as due diligence in attempting to obtain a statement of facts. *Castillo v. State*, 595 S.W.2d 552 (Tex.Crim.App.1980);

*Cashion v. State,* 657 S.W.2d 517 (Tex.App. —Corpus Christi 1983, pet. ref'd). Indigency alone, in the absence of diligence, is not enough. *Castillo v. State,* 571 S.W.2d 6 (Tex.Crim.App.1978). "Since the trial court did not state its reasons for denying appellant's motion, we must uphold the trial court if its ruling is supported on either theory by the record." *Id.* 595 S.W.2d at 521. Abdnor, the affiant, did not testify that he was indigent, and the only witnesses limited their testimony to *as far as they knew* or *to what they had discovered*—not that Abdnor's affidavit of indigency was truthful which was the subject of the inquiry. The fact-finder was free to accept all, any part, or none of the testimony of these witnesses, as the "trial judge ... is the sole judge of the credibility of the witnesses and may accept or reject any part or all of the testimony given by State or defense witnesses." *Johnson v. State,* 571 S.W.2d 170, 173 (Tex.Crim.App.1978). The trier of fact is not compelled to believe the testimony of a witness in a criminal case even if the testimony is not controverted. *Id., quoting Porter v. State,* 388 S.W.2d 422 (Tex.Crim.App.1965). The testimony as to income, even if believed, does not compel a finding of indigency of Abdnor because *income* alone does not determine indigency since it fails to account for *assets* which may not produce income. Neither does a guardian's stated inability to find assets of his ward, even if believed, compel the fact finder to the conclusion that the ward is indigent, since a guardian cannot be said to possess *all* the knowledge of his ward. We hold that where the accused/affiant claims indigency but offers no testimony of his own in support thereof, the trial court is not compelled to the conclusion that the affiant's affidavit is truthful by the testimony of third party witnesses that they do not know or cannot discover any income or assets of the affiant. Likewise, we hold that the accused/affiant who files an affidavit of indigency, but neglects to support the affidavit's truthfulness with his own testimony, has failed to show diligence (in the form of his own testimony) to secure the very statement of facts he de-

sires to be provided to him. *Cashion,* 657 S.W.2d at 521. Likewise, since the evidence shows that Abdnor's father possessed a "personal" copy of the statement of facts and there is little doubt that Abdnor knew of the existence of his father's "personal copy," diligence, as required by *Cashion, supra,* would seem to require at least that Abdnor take the stand and testify that he asked Dad to loan him the "personal copy" to serve for the appeal and that Dad had refused.

■ Abdnor argues that he should neither be required, nor permitted, to testify as to his indigency since he is a person of such mentality as to cause the probate court to appoint a guardian in his behalf. We cannot agree for two reasons. First, our record reflects that Abdnor was specifically found competent to stand trial for the crime with which he was charged. Abdnor's competency is presumed unless such hearing establishes otherwise. Article 46.02, TEX.CODE CRIM.PROC.ANN. (Vernon 1981). Since the hearing established Abdnor's competency, his competency is presumed to continue until a subsequent hearing in the court trying his criminal case, if sought, should establish otherwise. Since Abdnor sought no additional hearing, we must presume he was still competent at the time of his indigency hearing. Second, the fact that a guardianship had been imposed upon Abdnor in the probate court would not have necessarily disqualified Abdnor as a witness in the indigency hearing. *Jackson v. State,* 403 S.W.2d 145 (Tex.Crim.App.1966), cert. denied, 385 U.S. 938, 87 S.Ct. 301, 17 L.Ed.2d 217 (1966). This court has held, in *T.E.I.A. v. Eubanks,* 240 S.W.2d 811 (Tex.Civ.App. —Dallas 1951) rev'd on other grounds, 151 Tex. 67, 246 S.W.2d 467 (1952), that a witness was not disqualified merely because it was shown that he was incarcerated (on similar findings by a Mississippi probate court) in the Mississippi State Insane Asylum, but only on a showing that his mental disorder affected the capacity to observe, recollect, or narrate the events in question. We hold that Abdnor was "permitted" to

testify at his indigency hearing inasmuch as he was not disqualified as a witness, and Abdnor was "required" to so testify in the sense that he had the burden to make the showing of indigency.

Abdnor, by his failure to testify to the truthfulness of his own affidavit deprives himself even of the "prima facie" showing as bestowed upon the testimony of similar affiants in *Castillo v. State*, 595 S.W.2d 552 (Tex.Crim.App.1980); *Zanghetti v. State*, 582 S.W.2d 461 (Tex.Crim.App.1979); *Barber v. State*, 542 S.W.2d 412 (Tex.Crim. App.1976); and *Conrad v. State*, 537 S.W.2d 755 (Tex.Crim.App.1976). There does not appear to be any precedent that accords third party witnesses (not the affiant) "prima facie" credibility because third party witnesses cannot be shown to be in a position to *observe*, and thus *know* whether the affiant is, in fact, truthful as to his assets or income. *See Johnson v. State*, 571 S.W.2d 170 (Tex.Crim.App.1978).

Since the trial court was not provided any "prima facie" proof of indigency from Abdnor and since the three witnesses' testimony did not resolve the issue, even if belief of their testimony were deemed compelled, we conclude that the trial court was entitled to hold the indigency affidavit of Abdnor not truthful and a free transcription not required.

In the absence of any brief (or supporting record) from Abdnor urging any other error committed by the trial court we affirm Abdnor's judgment of conviction.

APPENDIX

JOHN HOWARD ABDNOR
Balance Sheet
As of October 31, 1981

ASSETS

|  |  |
|---|---|
| Present value of agent's renewals | $ 1,445.30 |
| Greenville Avenue Bank savings account | 15.59 |
| **TOTAL ASSETS** | $ 1,460.89 |

LIABILITIES

|  |  |
|---|---|
| Loans against agent's renewals | $11,604.56 |
| Accrued self-employment income tax | 262.55 |
| **TOTAL LIABILITIES** | $11,867.11 |

NET WORTH                                          ($10,406.22)

DEFENDANT'S EXHIBIT
No. 2