John Howard **ABDNOR, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 314–85.

Court of Criminal Appeals of Texas, En Banc.

June 11, 1986.

---

**138**

Ronald L. Goranson, Dallas, Oscar H. Mauzy, Grand Prairie, for appellant.

Henry Wade, Dist. Atty. and Ruth E. Plagenhoef, Karen Chilton Beverly, Gerald Banks and Mike Gillette, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of murder, and his punishment was assessed by the jury at life imprisonment. On appeal the appellant asserted in a single ground of error that the trial court erred in denying his request, as an indigent, for a statement of facts for the purpose of his appeal in violation of federal and state constitutional provisions and Article 40.09, § 5, V.A.C.C.P. The Court of Appeals found no error in the trial court's ruling denying appellant the status of an indigent for the purpose of securing a free transcription of the court reporter's notes and affirmed the conviction. *Abdnor v. State*, 687 S.W.2d 14, 15 (Tex.App.-Dallas 1984). We granted appellant's petition for discretionary review to determine the correctness of the Court of Appeals' decision.

Before addressing appellant's claims, we begin by reviewing the procedural history of the present case. On September 3, 1980, appellant was indicted for the murder of Janis Ballew, a nurse with whom he had allegedly become personally involved. A hearing was held to determine appellant's competency to stand trial, and on March 10, 1981, a jury found appellant to be competent.

Appellant's trial commenced on September 14, 1981, and on October 26, 1981, the jury returned a guilty verdict. Punishment was assessed at life imprisonment. Appellant's motion for new trial was overruled on December 10, 1981, and a timely notice of appeal was filed on the same day. Also on December 10, 1981, appellant filed his affidavit for a transcription of the reporter's notes or statement of facts, which was denied by the trial judge on December 14, 1981, after a hearing on indigency before the court.

Appellant applied to the Dallas Court of Appeals for a writ of mandamus to obtain a statement of facts for the purpose of the appeal of his murder conviction. The Court of Appeals ruled that since notice of appeal had been given it had statutory mandamus jurisdiction to enforce its appellate jurisdiction, however, appellant failed to sustain his burden to establish the truthfulness of his affidavit of indigency. *Abdnor v. Ovard*, 635 S.W.2d 864, 867–69 (Tex.App.-Dallas 1982). This Court subsequently granted appellant's petition for discretionary review and held:

"An appellant may contest the trial court's denial of indigency status on appeal, not by application for writ of mandamus. Accordingly, though we disagree with the reasons for denying mandamus relief given by the Court of Appeals, that denial is affirmed." *Abdnor v. Ovard*, 653 S.W.2d 793, 794 (Tex.Cr.App.1983).

Appellant pursued his appeal to the Dallas Court of Appeals reurging the identical issue concerning his request for a statement of facts on appeal. The Court of Appeals decided that appellant was not entitled to a free transcript of the evidence due to his failure to personally testify to the truthfulness of his own affidavit of indigency. *Abdnor v. State*, 687 S.W.2d, supra, at 16. Following the denial of appellant's motion for rehearing by the Court of Appeals, appellant filed his petition for discretionary review in this Court.

At the indigency hearing based upon appellant's affidavit filed pursuant to Article 40.09, § 5, V.A.C.C.P., on December 14, 1981, the appellant called Sandra Day, the official court reporter for the 265th District Court. She testified she estimated the statement of facts would amount to 7,000 pages at $3.50 per page and cost $24,500. She related that she would require a $12,500 down payment before commencing the preparation of the transcription of her notes, and when it was half finished she would require the payment of the balance. On cross-examination she testified she had prepared excerpts of appellant's competency to stand trial hearing at the request of appellant's father as his "personal copy, an extra copy." Day also testified that on December 7, 1981, some seven days earlier, appellant's father had paid $7,000 as a "down payment" towards a personal copy of the entire transcript. Nothing indicated Day had commenced the preparation of the statement of facts.

John Abdnor, appellant's father, testified he had been appointed by the Dallas County Probate Court as the 41-year-old appellant's guardian in March 1981; that appellant was unemployed, and since July 1980 appellant has been confined in jail or a mental hospital. As guardian he familiarized himself with appellant's assets and liabilities, and his ability to earn income. He stated the appellant had no household furnishings, no stocks or bonds or real estate or any assets except as listed on a financial statement of total assets and liabilities and reflecting a negative net worth of $10,000.[1] The record reflects:

"Q. Okay, now, in fact, your son has no assets or any income to pay for the—himself to pay individually to pay for this statement of facts, the transcript of the court reporter notes in this case?

"A. I don't believe he could pay for anything, sir."

Appellant's father testified that no request had been made for court-appointed counsel on appeal as he didn't "want to take those kind of chances, sir" and that he had personally retained appellate counsel for his son. He further testified he could pay for the statement of facts but "under protest."

Jene Gravley, accountant for appellant's father, was called by the appellant. She had helped prepare appellant's income tax returns for the years 1978, 1979 and 1980 and knew of no additional income that was not recorded in such returns, which showed a total income of $4,028.41 in 1978, $3,523.67 in 1979, and $5,716.79 in 1980.

Appellant also introduced his own affidavit of indigency, the financial statement showing a negative net worth of $10,406.22 as of October 31, 1981, the income tax returns, an income statement for January through October 31, 1981 showing a total income of $2,823.14 without deduction of expenses, etc., without objection. Although the appellant's witnesses were cross-examined, the State offered no evidence to rebut appellant's claim of indigency in order to obtain a statement of facts for the purpose of appeal. Before the close of the hearing the trial judge stated for the purpose of the record appellant had earlier made bonds of $35,000, $100,000 and $95,000. Whether such bonds were personal or surety bonds was not revealed. The trial court introduced Court Exhibits 1 and 2, probate court records, appointing appellant's father as guardian and requiring him to attend appellant's trial.

At the conclusion of the hearing, the trial court simply denied appellant's request for a statement of facts without charge.

█ Since an appellate review of criminal convictions is provided in this state, a Texas trial judge has a duty under the federal and state constitutions to provide an indigent defendant with an adequate record on appeal. *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Lane v. Brown*, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); *Eskridge v. Wash-*

---

1. The assets reflected there were the present value of insurance agent's renewals of $1,445.30 and a savings account of $15.59. Liabilities are shown as $11,867.11.

*ington,* 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1959); *Draper v. Washington,* 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); *Williams v. Oklahoma,* 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969); *Mayer v. Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); *Curry v. State,* 488 S.W.2d 100 (Tex.Cr.App.1972); *Ex parte Mays,* 510 S.W.2d 606 (Tex.Cr.App.1974); *Cartwright v. State,* 527 S.W.2d 535 (Tex.Cr.App.1975); *Guillory v. State,* 557 S.W.2d 118, 120–121 (Tex.Cr.App.1977).

■ Once avenues of appellate review are established, they must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. See *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577, 581 (1966); *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341, 352 (1974); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, 633, n. 4 (1974); *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714, 723, n. 11 (1973); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

The procedure for obtaining a transcription of the court reporter's notes without charge is set forth in Article 40.09, § 5, V.A.C.C.P., which provides:

"5. Responsibility for Obtaining a Transcription of the Reporter's Notes

"If a party desires to have all or any portion of a transcription of the court reporter's notes included in the record, he shall so designate with the clerk in writing and within the time required by Section 2 of this Article. Such party shall then have the responsibility of obtaining such transcription from the court reporter and furnishing the same to the clerk in duplicate in time for inclusion in the record and the appellant shall pay therefor. *The court will order the reporter to make such transcription without charge to appellant if the court finds, after hearing in response to an affidavit filed by the appellant not more than 20 days after giving notice of appeal that he is unable to pay or give security therefor.* Upon certificate of the court that this service has been rendered, payment therefor shall be made from the general funds by the county in which the offense is alleged to have been committed in a sum to be set by the trial judge. The court reporter shall report any portion of the proceedings requested by either party or directed by the court." (Emphasis supplied.)

Such statute places the responsibility for obtaining a transcription of the court reporter's notes on the party who requests the same. Where the appellant contends he is indigent the procedure is set out, but the standards and guidelines are not delineated. Cf. *Barber v. State,* 542 S.W.2d 412 (Tex.Cr.App.1976) [2]

■ From the decisional law it appears that an appellant who claims indigency and requests a statement of facts without charge must (1) exercise due diligence in asserting his indigency including the timely filing of his affidavit, *Warminski v. Dear,* 608 S.W.2d 621 (Tex.Cr.App.1980); *Staten v. State,* 662 S.W.2d 672 (Tex.App.—Houston [14th] 1983), no petition for review, and

**2.** In *Warminski v. Dear,* 608 S.W.2d 621 (Tex.Cr. App.1980), this Court discussed the procedure under the former Code of Criminal Procedure (1925) as revealed by *Zamora v. State,* 165 Tex. Cr.R. 613, 309 S.W.2d 447 (1957). Under the former procedure an appellant's right to a statement of facts in a felony case upon proper presentation of a pauper's affidavit was absolute, *Wallace v. State,* 138 Tex.Cr.R. 625, 138 S.W.2d 116 (1940). The statutes gave the trial court no discretion to determine if affidavit of indigency was true, but made it a mandatory duty of the court to order the court reporter to prepare the transcription. *Harwell v. State,* 147 Tex.Cr.R. 505, 182 S.W.2d 713 (1944). In *Zamora,* supra, the Court cited *Wallace* and *Harwell* and concluded that if the court heard evidence on the question of indigency such hearing would be unauthorized and the evidence adduced would not be considered by the appellate court. Article 40.09, § 5, supra, was a reform measure in response to the harsh effect of *Zamora.* It gave the court the discretion to decide the matter of indigency after hearing even though no contest is filed by the State. As to the procedure after September 1, 1986, see Texas Rules of Appellate Procedure, Rule 53(j)(2).

(2) sustain the allegations of his affidavit as to indigency at the hearing provided by Article 40.09, § 5, supra. Indigency alone in the absence of diligence is not enough, and vice versa.

■ It is incumbent upon an appellant, whether indigent or not, to exercise diligence in securing a copy of the transcription of the court reporter's notes. *Castillo v. State*, 571 S.W.2d 6, 7 (Tex.Cr.App.1978); *Hoagland v. State*, 541 S.W.2d 442 (Tex.Cr. App.1976); *Weeks v. State*, 521 S.W.2d 858 (Tex.Cr.App.1975); *Ex parte Thorbus*, 455 S.W.2d 756 (Tex.Cr.App.1970); *Conerly v. State*, 412 S.W.2d 909 (Tex.Cr.App.1967). It is well established that due diligence requires an appellant to timely file a pauper's oath in order to secure a free statement of facts. *Hilliard v. State*, 401 S.W.2d 814 (Tex.Cr.App.1966), cert. den. 385 U.S. 941, 87 S.Ct. 310, 17 L.Ed.2d 220; *Ex parte Thorbus, supra; Rhoda v. State*, 514 S.W.2d 937 (Tex.Cr.App.1974). In fact, the convictions in *Castillo* (571 S.W.2d 6), *Hoagland* and *Weeks* were affirmed in the absence of a statement of facts because these defendants failed to exercise due diligence in filing affidavits of indigency in order to secure a free statement of facts.

In *Rhoda*, supra, this Court wrote:

"Neither has he been deprived of a statement of facts because neither he nor his counsel designated such for inclusion in the record nor sought to secure it at the appropriate stage of the appellate process (see Article 40.09, supra).

An appellant, being represented by counsel, may not neglect to designate matters for inclusion in the record and then, late in the appellate process, claim indigency and require a return to the beginning of that process. The right of an indigent appellant to a free statement of facts is independent of the requirement that a statement of facts, free or otherwise, be requested at the appropriate stage of the appellate process. If that requirement not be met, the right to have it included in the record on appeal is waived."

Due diligence was also required in *Foley v. State*, 514 S.W.2d 449 (Tex.Cr.App.1974),

where the appellant failed to apprise the trial court of his whereabouts so the court could inquire into possible indigency. Such failure was tantamount to a waiver of his right to submit further evidence as to indigency. In *Shaw v. State*, 539 S.W.2d 887 (Tex.Cr.App.1976), where the appellant failed to appear at the hearing and to present evidence concerning his indigency, and made no attempt to show why he did not appear, he waived any complaint about his status as an indigent.

Even if due diligence is exercised, the appellant has the burden of sustaining the allegations of his affidavit of indigency, to show the truthfulness thereof when the court conducts the hearing under Article 40.09, § 5, V.A.C.C.P. In *Yorko v. State*, 672 S.W.2d 3 (Tex.App.—Houston [14th] 1983), review ref'd., the court noted that the appellant there, as the movant, had the burden to prove his indigency, and did not meet it when the only evidence offered was a void affidavit. See also *Drummond v. State*, 675 S.W.2d 545 (Tex.App.—Houston [14th] 1984). Other cases have talked in terms of the appellant having established a "prima facie" case of indigency. See *Stephens v. State*, 509 S.W.2d 363, 365 (Tex. Cr.App.1974); *Castillo v. State*, 595 S.W.2d 552 (Tex.Cr.App.1980); *Zanghetti v. State*, 582 S.W.2d 461 (Tex.Cr.App.1979); *Barber v. State*, 542 S.W.2d 412 (Tex.Cr.App.1976); *Conrad v. State*, 537 S.W.2d 755 (Tex.Cr. App.1976). See *Shaw* as to failure to present evidence.

■ It has been frequently said that a determination of whether an appellant is entitled to a free transcription of the court reporter's notes is to be made on a case by case basis. *Cardona v. Marshall*, 635 S.W.2d 741, 742 (Tex.Cr.App.1982); *Castillo v. State*, 595 S.W.2d 552, 554 (Tex.Cr. App.1980); *Zanghetti v. State, supra; Ex parte Bain*, 568 S.W.2d 356 (Tex.Cr.App. 1978); *Vitela v. State*, 566 S.W.2d 933 (Tex.Cr.App.1978); *Stephens v. State*, 509 S.W.2d 363 (Tex.Cr.App.1974); *Staten v. State*, 662 S.W.2d 672 (Tex.App.—Houston [14th] 1983); 26 Tex.Jur.3rd, Crim.Law, § 4041, p. 308. Of course, "no rigid stan-

dard exists" for determining indigency on appeal. *Abdnor v. Ovard, supra*, 653 S.W.2d at 794; *Ex parte Combs*, 545 S.W.2d 171 (Tex.Cr.App.1977); *Roberson v. State*, 538 S.W.2d 788 (Tex.Cr.App.1976). The issue, of course, to be decided is that of the financial status at the time of the appeal, not the trial. *Barber v. State*, 542 S.W.2d 412 (Tex.Cr.App.1976), and implicates the personal financial condition of the appellant, not that of his parents or other relatives. *Ex parte King*, 550 S.W.2d 691 (Tex.Cr.App.1977); *Ex parte Combs, supra; Castillo v. State*, 595 S.W.2d 552, 554 (Tex.Cr.App.1980); *Abdnor v. Ovard, supra* (653 S.W.2d at 794). See also *Conrad v. State*, 537 S.W.2d 755, 757 (Tex.Cr.App. 1976).

"Outside sources such as relatives and even employers are not to be considered unless they are legally bound to pay for defendant's appellate expenses." *Staten, supra*, at 674. See also *Drummond v. State*, 675 S.W.2d 545 (Tex.App.—Houston [14th] 1984), review ref'd.

■ Further, an appellant cannot be deprived of his right to a free statement of facts on appeal by the mere fact he was represented by retained counsel at trial. 26 Tex.Jur.3rd, Crim.Law, § 4041, pp. 3707–308 and cases cited. Retained trial counsel is not bound to furnish appellate record at his own expense or to handle the appeal without fee. *Conrad v. State*, 537 S.W.2d 755 (Tex.Cr.App.1976); *Castillo v. State, supra* (595 S.W.2d 554). The fact that an appellant was represented by retained counsel and was out on bond at the time of the probation revocation hearing and out on bond pending appeal is not determinative of appellant's indigency at the time of the appeal. *Hicks v. State*, 544 S.W.2d 424 (Tex.Cr.App.1976).

With this background, some of which is most pertinent, we turn to the case before us. Appellant exercised due diligence in attempting to secure the statement of facts by timely filing his affidavit of indigency embodying his request. An indigency hearing was held pursuant to Article 40.09, § 5, supra, in response to the affidavit.

Appellant was present and offered evidence. Appellant cannot be faulted for failing to exercise due diligence. Did he then satisfy the burden of sustaining the allegations of the affidavit at the hearing?

On direct appeal the Dallas Court of Appeals (*Abdnor v. State*, 687 S.W.2d at p. 17) wrote:

"... We hold that where the accused/affiant claims indigency but offers no testimony of his own in support thereof, the trial court is not compelled to the conclusion that the affiant's affidavit is truthful by the testimony of third party witnesses that they do not know or cannot discover any income or assets of the affiant. Likewise, we hold that the accused/affiant who files an affidavit of indigency, but neglects to support the affidavit's truthfulness with his own testimony, has failed to show diligence (in the form of his own testimony) to secure the very statement of facts he desires to be proved to him. *Cashion [v. State]*, 657 S.W.2d [517] 521. Likewise, since the evidence shows that Abdnor's father possessed a 'personal' copy of the statement of facts and there is little doubt that Abdnor knew of the existence of his father's 'personal copy,' diligence, as required by *Cashion, supra*, would seem to require at least that Abdnor take the stand and testify that he asked Dad to loan him the 'personal copy' to serve for the appeal and that Dad had refused."

■ We disagree and reject its reasoning. There is no support for the requirement that a defendant must personally testify to establish a prima facie case of indigency under Article 40.09, § 5, V.A.C.C.P. In fact, in *Abdnor v. Ovard*, 653 S.W.2d 793 (Tex.Cr.App.1983), the mandamus action, this Court, speaking through Judge Clinton, stated in footnote # 2:

"We also disapprove of the implication in the opinion below [*Abdnor v. Ovard*, 635 S.W.2d 864 (Tex.App.—Dallas 1982)] that an applicant is required to testify, rather than call witnesses in his behalf...."

The panel of the Dallas Court of Appeals chose to erroneously ignore this footnote. Certainly there have been cases where the appellant-affiant has testified and this Court has held that such testimony alone or with stipulations or other evidence has established a "prima facie" showing as to indigency. *Castillo v. State*, 595 S.W.2d 552 (Tex.Cr.App.1980); *Zanghetti v. State*, 582 S.W.2d 461 (Tex.Cr.App.1979); *Barber v. State*, 542 S.W.2d 412 (Tex.Cr.App.1976); *Conrad v. State*, 537 S.W.2d 755 (Tex.Cr. App.1976); *Stephens v. State*, 509 S.W.2d 363 (Tex.Cr.App.1974). Nothing in these cases indicates, however, that the personal testimony of the appellant-affiant is absolutely essential to a "prima facie" showing of indigency. The Court of Appeals misreads these cases and misinterprets the law in stating there appears to be no precedent that accords "third party witnesses ... 'prima facie' credibility."

An appellant must exercise due diligence in asserting his indigency, filing his pauper's oath, etc., in order to secure a free statement of facts, but the Court of Appeals is in error in holding that due diligence also requires an appellant must personally testify at the indigency hearing. The court confuses due diligence with the burden of sustaining the allegations of indigency. While the appellant would always be an important witness at an indigency hearing, there is nothing in the law to prevent an appellant from sustaining his burden by the testimony of other witnesses and documentary evidence.

■ Likewise, the Court of Appeals is in error on the facts and the law in holding that due diligence required that appellant Abdnor not only had to testify, but to testify he had asked his father for the "personal copy" of the statement of the facts to be used for the appeal and that the father had refused. *Cashion*, relied upon by the Court of Appeals, makes no such due diligence requirement. And the facts show the "personal copy" was not in existence. The original has never been transcribed. The State admits as much in its appellate brief.

■ At the indigency hearing appellant established by both testimonial and documentary evidence a prima facie showing at the time of the appeal of his personal financial inability to secure the statement of facts. Appellant introduced his own affidavit of indigency without objection as well as a financial statement reflecting a negative net worth of $10,000, his income tax returns for 1978, 1979 and 1980, and a current statement of income for 1980. His father testified that appellant had been confined in a mental hospital or jail since July 1980, was unemployed, had no household furnishings, real estate, stocks or bonds or any assets except as reflected by the financial statement. An accountant testified as to her knowledge of appellant's income and preparation of income tax returns. The State called no witnesses, made no effort to show that appellant had assets to pay for $24,500 statement of facts, and offered no evidence to show that appellant's father or others were legally obligated to pay for the appellate record. Viewing the record as a whole the trial court abused its discretion in denying to the appellant a statement of facts for the purpose of appeal. As we have seen, the fact that appellant, now confined, once made bond or bonds, had retained trial counsel and counsel on appeal paid for by his father, or that his father is financially able to pay for the statement of facts "under protest" does not legally change the situation. *Castillo, McCombs* and *Hicks*, supra.

In *Conrad v. State*, 537 S.W.2d 755, 757 (Tex.Cr.App.1976), this Court wrote:

"Sometimes parents run out of funds and cannot help a child who has been charged with committing crimes. *In some cases parents may have funds but will not furnish them for counsel and for the record. If they have money, this does not mean that a defendant is not indigent.*" (Emphasis supplied.)

It may be repugnant to require the Dallas County taxpayers to shoulder the cost of the statement of facts when the father could possibly pay for the same. However, on the record before us, there is no suffi-

cient evidence to show this now 45-year-old appellant has financial resources unqualifiedly available to him to secure the $24,500 statement of facts. Outside sources such as relatives and even employers are not to be considered unless they are legally bound to pay for the expenses of the appeal. See Drummond, supra, at 674.

Accordingly, the appeal here must be abated to the trial court so that the statement of facts may be available to appellant as an indigent for the purpose of his appeal, unless further facts are developed to show that some change has occurred since the last hearing and he is not now indigent.

The judgment of the Court of Appeals is reversed, the trial court order denying the statement of facts is set aside, and the appeal is abated and the cause remanded to the trial court for action consistent with this opinion.